THE STATE *vs.* CHARLES S. ORR.

Third Judicial District, Bridgeport, April Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The charter of the city of Bridgeport authorized its common council to make ordinances relative to all nuisances, to the cleanliness and health of the city, to the removal and disposal of filth, rubbish and nuisances, and to any and all other subjects that shall be deemed necessary and proper for the protection and preservation of the health, property and lives of the citizens. An amendment (Special Acts of 1895, p. 7) empowered the city board of health to contract for the collection and removal of garbage and offal in the city, for such period of time and at such price as the board might deem best. The common council passed an ordinance which authorized the board of health to take such measures as they deemed effectual for the removal of "garbage and offal," subject to certain prescribed rules and regulations. By §.2 of the ordinance, the words "garbage and offal" were declared to mean "only such refuse matter as accumulates in the preparation of food for the table." Subsequent sections, under which the defendant was prosecuted and convicted, provided that no one should collect and transport garbage and offal, without first having obtained a permit from the board of health, under penalty of a fine not exceeding $10 for each offense. *Held:—*

1. That the city was fully justified by its charter and the amendment of 1895, in making ordinances to regulate the collection and removal of garbage and offal; and that the ordinance in question was within the power thus conferred.

2. That the term " refuse matter " as employed in the ordinance, embraced only such matter as was either in fact noxious, or as had been refused and abandoned by its owner as worthless.

3. That matter of this kind which had been separated but not abandoned as worthless, remained property which, so long as it did not in fact constitute a nuisance, might be sold or otherwise disposed of at the will of the owner.

4. That it was not essential that the garbage, at the time of its transportation, should be in fact a nuisance and detrimental to health; it was enough if it was such " refuse matter" as accumulated in the preparation of food for the table.

5. That the methods of regulation and procedure prescribed by the ordinance and the amendment of 1895, did not create a monopoly by which the common rights of citizenship were infringed.

6. That the absence in the charter of any express authority to require licenses for the business, did not prevent the mode of regulation adopted, since the collection and removal of garbage was a business which as usually carried on was in its nature dangerous to public health, and the general police powers vested in the city by its charter, in connection with the Special Act of 1895, implied the right to limit the number of those who might pursue it.

7. That the defendant had no absolute right to a license or permit, and therefore the trial court committed no error in excluding evidence that before he applied for one, the board had instructed its clerk to issue no more permits to any one.

8. That evidence that the defendant was under contract with certain restaurant proprietors to remove all the garbage from their restaurants, was also properly excluded; as no contract to perform an unlawful act could justify its performance.

Any occupation comes within the range of the police power, which is such as to be naturally liable to create a nuisance unless subjected to special regulation; whether it be so conducted as in fact to create a nuisance, or not.

[Argued April 28th—decided June 25th, 1896.]

PROSECUTION for the violation of an ordinance of the city of Bridgeport, by collecting and transporting garbage and offal without a license, brought to the City Court of said city and thence, by defendant's appeal, to the Criminal Court of Common Pleas in Fairfield County, and tried to the jury before *Walsh, J.;* verdict and judgment of guilty, and appeal by the defendant for alleged errors in the rulings and charge of the court. *No error.*

The ordinance was as follows :—

## "AN ORDINANCE REGULATING THE REMOVAL OF KITCHEN GARBAGE AND OFFAL.

"*Be it ordained by the Common Council of the City of Bridgeport :* Section 1. The Board of Health of the city of Bridgeport shall have power, and is hereby empowered, to take such measures as they shall deem effectual for the removal of garbage and offal from the city of Bridgeport, or any portion thereof ; may employ or make contracts with one or more persons for the removal of the same, under the following rules and regulations :

"Sec. 2. For the purpose of this ordinance the term 'Garbage and Offal' is deemed, and is hereby declared to mean only such refuse matter as accumulates in the preparation of food for the table.

"Sec. 3. The head of every family living in any tenement or dwelling-house in the city of Bridgeport, the keeper of every hotel, restaurant, eating-house, boarding-house, or other place where meals are furnished to persons in said city, shall cause all of his or her kitchen garbage or offal to be placed in suitable covered vessels (not larger than a half barrel), in some part of his or her premises, convenient for removal, or in some place designated by the clerk of the Board of Health, at such times as the same may be called for by the garbage contractor of said city ; provided, however, that any person may be excepted from the provisions of this section, upon obtaining a permit to that effect from the clerk of the Board of Health. No boxes, buckets, or other receptacles used for the purpose aforesaid, shall be placed upon any street, sidewalk, footway, or any other public place whatsoever.

"Sec. 4. No person shall place in any vessel used for the deposit of garbage or offal, mix or mingle with such garbage and offal, any ashes, coal dirt, sweepings, urine, excrement or other refuse matter not designated as garbage and offal by section 2 of this ordinance.

"Sec. 5. In all cases of complaints or disputes arising as to the place where vessels containing garbage or offal awaiting

removal by the contractor shall be put, the clerk of the Board of Health shall forthwith designate the place or places where such vessels shall be set while awaiting such removal, and his decision shall be final.

"Sec. 6. No person shall collect and transport garbage and offal in the city of Bridgeport without first having obtained a permit from the Board of Health, authorizing such person to collect and transport garbage and offal in conformity with the provisions of this ordinance.

"Sec. 7. All garbage or offal removed shall be carried through said city in water-tight covered wagons or carts, or in water-tight covered vessels placed in wagons or carts, and shall be so loaded and driven that none of their contents shall fall or spill therefrom, and every such wagon or cart used for the purpose aforesaid shall be clean and well painted on the outside, and shall be marked with the words "City Garbage Cart," with the name of the contractor, number of the cart, and number of the ward or district (if so divided), which marking or lettering shall be plainly and intelligibly displayed and exposed to public view when such carts or vehicles are in use, and no cart or vehicle shall be used for the purpose aforesaid unless the same shall have been first inspected, approved, and duly licensed by the clerk of the Board of Health. And said carts or vehicles shall at all times be subject to the inspection of any police officer or citizen.

"Sec. 8. The garbage contractor or other person employed by the Board of Health shall call regularly at all dwellings, tenements, hotels, restaurants, or other buildings designated by the said board, and remove promptly and in as cleanly a manner as possible all garbage or offal that may be offered, and shall return the receptacles to the place on such premises from which the same were taken.

"Sec. 9. No person engaged in collecting and transporting garbage or offal shall do, or permit to be done, anything in connection therewith that shall be needlessly offensive or filthy, in relation to any person, place, building, premises or highways. It shall be removed once a week during the months of January, February, March, April, November, and

December; twice a week during the months of May and October; and three times a week during the months of June, July, August and September.

" Sec. 10. All garbage and offal which shall be removed through said city shall be carried and deposited in such place or places as may be designated and approved by the Board of Health, and shall be disposed of in such manner as not to create a nuisance, and the covers of all carts, wagons or vessels used for the purpose of removing such garbage or offal, shall be kept tightly closed while they are being transported through the streets of the city. No deposit of garbage or offal shall be made within the limits of the city of Bridgeport, or upon any wharf, or upon any vessel lying at any wharf, except by permit from the Board of Health.

" Sec. 11. The clerk of the Board of Health shall provide and keep a record book, in which he shall record all proceedings, votes or orders of said board ; also all contracts entered into, or licenses issued by authority of said board.

" Sec. 12. All expenses incurred by the Board of Health, under the provisions of this ordinance, shall be paid by the city, after the same shall have been approved by the clerk of the Board of Health, and duly audited by the auditor of said city.

" Sec. 13. Any person violating any section of this ordinance shall forfeit and pay, for the use of said city, a fine not exceeding ten dollars for each offense."

That the defendant violated this ordinance, as was alleged in the complaint, was not disputed; but he claimed, and asked the court to instruct the jury, that it was void, and, should this charge be refused, that if they found that he tried to procure a license, and failed because the board of health had refused to license any one, he was entitled to a verdict. The court instructed the jury that the ordinance was valid, and declined to instruct them that a refusal by the board of health to license any one would justify the defendant in engaging in the business in question without a license.

The charter of the city (§ 24) empowered the common council to make ordinances " relative to all nuisances, rela-

tive to all cleanliness and health of the city, relative to the removal and disposal of all filth, rubbish, nuisances, incumbrances and obstructions in the streets, highways, walks, lands, buildings and other places ; and relative to any and all other subjects that shall be deemed necessary and proper for the protection and preservation of the health, property and lives of the citizens." By an Act approved February 28th, 1895 (Special Acts of 1895, p. 7) the board of health of the city was " empowered to contract for the collection, removal, and disposal of garbage and offal in said city, for such period of time and at such price as said board of health shall deem to be for the best interests of the city."

*David B. Lockwood* and *Alfred B. Beers,* for the appellant (defendant).

The finding shows that the garbage, in this case, was fresh and its removal not dangerous to the public health. A by-law, which assumes to be a police regulation, but deprives a party of the use of his property without regard to the public good, under the pretense of the preservation of health, when it is manifest that such is not the object and purpose of the regulation, will be set aside as a clear and direct infringement of the right of property without any compensating advantages. The law will not allow the rights of property to be invaded under the guise of a police regulation. Cooley's Const. Lim. (6th Ed.) 247, 485, 486 ; *Austin* v. *Murroy,* 16 Pick. 121 ; *Corfield* v. *Coryell,* 4 Wash. C. C. 380; *Vanzant* v. *Waddel,* 2 Yerg. 260 ; *Com.* v. *Towles,* 5 Leigh, 748; *Chicago* v. *Rumpff,* 45 Ill. 90 ; *Norwich Gas Light Co.* v. *Norwich City Gas Co.,* 25 Conn. 19 ; *Hudson* v. *Thorne,* 7 Paige's Ch. 261 ; *State* v. *Indianapolis,* 69 Ind. 375 ; *Warner* v. *Curran,* 75 id. 309 ; *Ritchie* v. *People,* 155 Ill. 98 ; *River Co.* v. *Belu,* 77 Mo. 98. A by-law which prohibits one person from carrying on a certain business and allows another to carry on the same business is void. *Hudson* v. *Thorne,* 7 Paige's Ch. 261 ; Cooley's Const. Lim. (6th Ed.) 244–246. The court erred in charging that said ordinance is an ordinance which regulates a business which is dan-

gerous to the public health. The finding does not show it. The board of health has not the power to assume in advance what is or will become a nuisance or dangerous to public health, and contract for its removal. *Gregory* v. *New York*, 40 N. Y. 273; Dillon on Municipal Corp. § 320. The court erred in refusing to charge that the privilege of collecting garbage should be extended indiscriminately to all who are willing to comply with the rules and regulations of such collection. *Petition of E. M. Lowe*, 54 Kan. 757; *Wallys Heirs* v. *Kennedy*, 2 Yerg. 554; *Lewis* v. *Webb*, 3 Me. 326; *Durham* v. *Lewiston*, 4 Me. 140; *Holden* v. *James*, 11 Mass. 396; *People* v. *Frisbie*, 26 Cal. 135; *Davis* v. *Menasha*, 21 Wis. 560; *Millett* v. *The People*, 117 Ill. 294; *Godcharles* v. *Wigeman*, 113 Pa. St. 431; Cooley's Const. Lim. (6th Ed.) 483, 733. The board of health cannot prohibit the carrying on of a lawful business not necessarily a nuisance, but which may be conducted without injury or danger to the public health. *Wiel* v. *Ricord*, 24 N. J. Eq. 169; *Ex-parte Sing Lee*, 96 Cal. 354. A municipality cannot create a monopoly. *Altgelt* v. *City of Antonio*, 81 Texas, 436, 13 L. R. A. 383, and cases cited in note; Tiedeman on Police Power, 315, 316. The court erred in excluding the testimony offered by the defendant in relation to his contracts with restaurant keepers and in refusing to permit him to show what instructions were given by the health board to its clerk relative to refusing licenses to every one.

*John H. Light* and *V. R. C. Giddings*, for the appellee (the State).

The exercise of municipal authority through by-laws to regulate and suppress nuisances is ancient. *Pierce* v. *Bartram*, Cowper, 269; Com. Dig., By-law B, 3; *Case of Vandine*, 6 Pick. 187; *In re Nightingale*, 11 id. 168; *Com.* v. *Stodder*, 2 Cush. 574–576; *People* v. *Gordon*, 81 Mich. 306; *Dunham* v. *New Britain*, 55 Conn. 378; *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659; *Coates* v. *The Mayor*, 7 Cowen, 585. The legislature can invest municipal bodies with the same police power it has itself. *Ex parte Shrader*, 33 Cal. 279; *Johnson* v. *Simonton*,

43 id. 242. Ordinances having for their purpose the protection of the public health and of the same exclusive scope as this garbage ordinance, have been universally upheld. *Ex parte Casinello*, 62 Cal. 538; *Green* v. *Savannah*, 6 Ga. 1; *State* v. *Freeman*, 38 N. H. 426; *Chicago* v. *Barter*, 100 Ill. 57; *St. Louis* v. *Knox*, 74 Mo. 79; *Cronin* v. *People*, 82 N. Y. 318; *Carthage* v. *Frederick*, 122 id. 268; *State* v. *Schlemmer*, 42 La. An. 1166; *Com.* v. *Patch*, 97 Mass. 221; *Taunton* v. *Taylor*, 116 id. 254; *Ashbrook* v. *Com.*, 1 Brush (Ky.), 139; *Singer* v. *State*, 72 Md. 464. The validity or invalidity of the refusal to issue such a permit is not relevant to this criminal prosecution. A contract with a municipal corporation whereby the contractor shall have the exclusive right to collect, remove, or dispose of all garbage or offal, does not tend to create a monopoly, but is consonant with a valid exercise of the police powers relative to health. *Smiley* v. *McDonald*, 42 Neb. 5; *Walker* v. *Jameson*, 28 L. R. A. 679, Ind., March 1, 1895; *Louisville* v. *Wible*, 84 Ky. 390; *Swift* v. *New York*, 83 N. Y. 528; *Alfers* v. *San Francisco*, 32 Fed. Rep. 503; *National Fertilizer Co.* v. *Lambert*, 48 id., 458; *State* v. *Payson*, 47 La. An. 1029; *State* v. *Fisher*, 52 Mo. 174, 177; *River Rendering Co.* v. *Behr*, 7 Mo. App. 345; *Rae* v. *Flint*, 51 Mich. 526; *contra*, *In re Lowe*, 54 Kan. 757.

BALDWIN, J. The charter of the city of Bridgeport conferred upon the Common Council ample power to regulate by ordinance the collection and removal of garbage and offal.

The ordinance brought in question upon this proceeding deals only (§ 2) with "such refuse matter as accumulates in the preparation of food for the table." "Refuse matter," as the term is thus employed, can embrace nothing which has not been refused or rejected as unsuitable for table use. It may be thus rejected because it has little or no value for human food, or because it is decayed or unwholesome. It must in its nature be perishable; and can include little which is not liable to become decomposed or offensive, if left where it falls. The Common Council therefore had authority to

regulate its disposition, in such a way as to prevent it from becoming the occasion of a nuisance.

Much, however, that is of the nature of garbage and offal, and has slight value for table use, may be not unsuitable for the food of animals, for manure, or as materials for manufacture. Construing this ordinance with the strictness properly applicable to municipal legislation of a penal nature, the term "refuse matter" can only extend to matter which is in fact noisome, or which has been refused and rejected by the owner as worthless. Meat trimmings, potato parings, specked apples, and many other things of a like character, might be thrown aside in preparing table dishes, and yet properly utilized afterwards for other purposes.

. The mode of regulation of the disposition of kitchen refuse which is contained in this ordinance seems to be one of an alternative character.

The board of health is empowered to take such measures as it may deem effectual for the removal of this refuse from the whole city or any portion of it, and to this end to employ or make contracts with one or more persons, subject to certain rules, of which the following are the leading ones: No person shall collect and transport such refuse in the city without first having obtained a permit from the board. It shall all be carried through the city in water-tight covered carts, so loaded as not to spill; each to be plainly marked "City Garbage Cart," with the name of the contractor, and number of the cart, and of the ward, and to be used only when inspected, approved and licensed by the clerk of the board. All such refuse is to be placed by the person on whose premises it originates in suitable covered vessels, set there in a position convenient for removal, or in some place designated by the clerk of the board, so that it "may be called for by the garbage contractor of said city; provided, however, that any person may be excepted from the provisions of this section, upon obtaining a permit to that effect from the clerk of the board of health." No other matter whatever can be placed in such a vessel. "The garbage contractor or other person employed by the board of health

shall call regularly at all dwellings, tenements, hotels, restaurants, or other buildings designated by the said board, and remove promptly and in as cleanly a manner as possible all garbage or offal that may be offered, and shall return the receptacles to the place on such premises from which the same were taken. All garbage and offal which shall be removed through said city shall be carried and deposited in such places as may be designated and approved by the board of health, and shall be disposed of in such manner as not to create a nuisance, and the covers of all carts, wagons or vessels used for the purpose of removing such garbage or offal, shall be kept tightly closed while they are being transported through the streets of the city. No deposit of garbage or offal shall be made within the limits of the city of Bridgeport, or upon any wharf, or upon any vessel lying at any wharf, except by permit from the board of health." The clerk of the board is to enter in a record book "all contracts entered into, or licenses issued by authority of said board."

Under these provisions, and the authority of the Special Act of 1895, the board of health might contract with a single person to collect and remove garbage from the entire city, or with several persons to collect and remove it from as many different portions of the city. It might also make such contracts with respect to part of the city, or to certain buildings in part of the city, and leave the collection and removal of garbage from other places open to those who obtained from its clerk a proper permit, and provided proper means of transportation. By neither method of procedure would any monopoly be created, by which the common rights of citizenship would be infringed upon. *The Slaughter-House Cases*, 16 Wall. 36; *Alpers* v. *San Francisco*, 32 Fed. Rep. 503; *National Fertilizer Co.* v. *Lambert*, 48 id. 458. Nor did the absence in the charter of any express provision as to the grant of licenses to engage in this business, prevent the Common Council from resort to that mode of regulation, since it was a business which as usually carried on is in its nature dangerous to the public health, and as carried on in Bridgeport might, under the Act of February 28th, 1895, have

been made by the board of health the subject of a public contract. Over any such occupation a strict watch must be kept, and the general police powers vested in the city by § 24 of its charter, in connection with the Act of 1895, justify the implication of a right to limit the number of those who pursue it. *State* v. *Wordin*, 56 Conn. 216, 226; *Vandine, Petitioner*, 6 Pick. 187.

The defendant offered evidence to show that he had been for many years engaged in the business of collecting and removing garbage in Bridgeport, in carts so constructed as to satisfy the requirements of the ordinance; and that he had applied to the clerk of the board for a license or permit, and met with a refusal.

He also offered evidence, which was excluded, that permits had been previously issued to others; but that, before he applied, the board had instructed its clerk to issue no more to any one. This evidence was properly excluded. The board of health, having the right to limit the number of those engaged in this particular occupation, the defendant had no absolute title to a license. If the number which it had issued was unreasonably small, and if an inquiry into that subject was open to him in any proceeding, it was certainly not open in this, to which the board was not a party. He could not thus assume to take the law into his own hands, and pursue the business without a license, because a license had been wrongfully refused. His remedy, if he had any, would be to apply by mandamus to compel the board to grant him one.

The defendant offered evidence to show that all the garbage collected by him came from certain restaurants, with the proprietors of which he had contracts for its removal. This also was properly excluded. It was not claimed, and cannot be assumed that such engagements had been entered into before the adoption of the ordinance. Without inquiring whether, had the fact been otherwise, the law would have been otherwise, it is sufficient, as the case stands, to say that no contract to perform an unlawful act can justify its performance.

The defendant further offered evidence to prove, and claimed that it did prove, that the garbage he collected was fresh, and some of it fit for food; and there was no evidence on either side tending to show that any of this garbage "was sour or putrid and for that reason dangerous to the public health." In view of this, the defendant asked the court to instruct the jury that "the privilege of contracting to transport garbage is a liberty and property right, of which one cannot be deprived without due process of law; unless the jury find that such garbage at the time of its transportation is a nuisance and detrimental to health."

Such instructions were properly refused. It was a violation of the ordinance to collect and transport the kitchen refuse which was its subject, whether such of it as was being transported at the time of the act complained of was noxious or innoxious. It was enough that it was "such refuse matter as accumulates in the preparation of food for the table." There is so much of this kind of matter that is offensive and dangerous to the health of the community, that all may be properly made the subject of public supervision and control.

The ordinance does not extend to everything that is separated and thrown aside in the preparation of food for the table. Whatever of this description is not abandoned as worthless, remains property which, so long as it does not constitute a nuisance, may be sold or otherwise disposed of at the will of the owner. If the evidence had shown both that the contents of the defendant's cart, while they had been rejected for table use, were not offensive, and that they were in his possession as the agent or vendee of the original owners, he might have been entitled to a verdict, for he could not then have been engaged in the business for which a license was required.

The Court of Common Pleas was requested but declined to instruct the jury that "the board of health has no power to assume in advance that garbage is or will become a nuisance and detrimental to public health, and so contract arbitrarily for its removal or prohibit its removal by purchasers thereof; that the board of health cannot prohibit the carry-

ing on of a lawful business not necessarily a nuisance, and which may be conducted without injury or danger to the public health ; that the Common Council has no power under the charter of the city of Bridgeport to refuse a citizen the right to exercise a lawful calling, or to prohibit his exercise of the same when not dangerous to public health or safety."

There was no error in refusing these instructions. Ample authority is found in the charter and the Act of 1895 for dealing with the business of disposing of garbage and offal as one dangerous to the public health. Any occupation comes within the range of the police power which is such as to be naturally liable to create a nuisance, unless subjected to special regulations; whether it be so conducted as, in fact, to create a nuisance, or not. The prevention of nuisances is quite as important as their abatement. *Raymond* v. *Fish*, 51 Conn. 80, 96.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.