Ford, J.
It was sought in this ease to enjoin the city of Cleveland and its officers from interfering with the plaintiff in the prosecution of his business of collecting dead animals and transporting them to his plant, for the purpose of reduction into marketable products, and also from collecting animal and vegetable matter from hotels, restaurants, butcher shops, etc., for a like purpose. The ordinance under which the city claimed to be acting was Sections 1683-4-5 of the ordinances of Cleveland.
No doubt the statutes of the state of Ohio afford ample authority to the defendant to pass an ordinance of the kind in question to control the collection and reduction of garbage and offal. No doubt there is authority in the statute to provide for a monopoly by the city for such municipal service, and that parties may be penalized for interfering by collecting such garbage or *322 carrying the same over the streets, and these propositions are amply supported throughout the various states by able and well-considered authorities; but the garbage or offal, which is the subject-matter of the legislation in question, must be matter that is of necessity accumulated in connection with domestic life and housekeeping, hotel, and restaurant, i. where human food is prepared for immediate table consumption; and such matter must be matter that is substantially worthless and of a kind that is presently or potentially offensive or noxious and dangerous to life and comfort of society. • ' •
When, however, an ordinance of the kind in the ease at bar is passed, which includes^ under the term “garbage and'offal,” articles that are commodities in the market, and that are sanitary, and in no way threatening to the public health, such as dead animals in the possession of their owners, and such commodities as “slaughterhouse offal,” which, by the testimony, is á known article of commerce in this city and community and running into the values of hundreds of thousands of dollars, when such articles as these are included in an ordinance, such, ordinance, if not altogether void, is at least void as far as the articles just enumerated are concerned. This is on the ground that, under the terms of this ordinance, the city is authorized to take possession of these from the citizens without giving compensation, which is unnecessary, unreasonable and in violation of the Constitution. This view is supported by authority. See Dillon on Municipal Corporations, fifth edition, Sections 678 and 679, which are as follows:
“Section 678. [Removal and Disposal of Garbage and Refuse Matter.] The removal and disposal of garbage, offal, and other refuse matter is recognized as a proper subject for the exercise of the power of a municipality to pass ordinances to promote the public health, comfort, and safety. The natural scope of an ordinance on this subject is confined to discarded and rejected matter, i. e., to such as is no longer of value to the owner for ordinary purposes of domestic consumption. If the matter in question has not been rejected or abandoned as worthless and is not offensive in any way to the public health, it does not come within the natural scope of such an ordinance. Garbage matter and refuse are regarded by the decisions as inherently of such a *323 nature as to be either actual or potential nuisances, by reason of the inherent nature of the substance. It 'is therefore not a valid objection to an ordinance requiring disposal in a specified manner that garbage has some value for purposes of disposal, and that the effect of the ordinance is to deprive the owner or householder of such value. That the owner suffers some loss by destruction or removal without compensation is justified by the fact that the loss is occasioned through the exercise of the police power of the state, and the loss sustained by the individual is presumed to be compensated in the common benefit to the public.
“Founded upon the foregoing considerations, it is therefore within the power of the city not only to impose reasonable restrictions and regulations upon the manner of removing garbage, but also, if it sees fit, to assume the exclusive control of the subject, and to provide that garbage and refuse matter shall only be removed by the officers of the city, or by a contractor hired by the city, or by some single individual to whom an exclusive license is granted for the purpose. An exclusive right so created is not open to the objection that it is a monopoly.
“An ordinance of a city prohibiting, under a penalty, any person, not duly licensed therefor by the city authorities, from ‘removing or carrying through any of the streets of the city any house-dirt, refuse, offal, or filth,’ is not improperly in restraint of trade, and is reasonable and valid. Such a by-law is not in the nature of a monopoly, but is founded upon a wise regard for the public health. It was contended that the city could regulate the .number and kind of horses and carts to be employed by strangers or unlicensed persons, as well as they could licensed persons; but practically it was considered that the main object of the city could be better accomplished by employing men over whom they have entire control, night and day, who are at hand, and able from habit to do the work in the best way at the proper time.”
“Section 679. [Removal and Disposal of Carcasses of Animals.] The weight of authority seems to have differentiated the removal and disposal of carcasses of animals from the removal and disposal of garbage and refuse matter. A dead animal is not per se a nuisance, and is not necessarily dangerous to the public health. The carcass of a dead. animal, from whatever cause the death may have ensued, has some value to the property owner, and of this value he can not be deprived without due compensation. Hence, under statutory authority, while the city may require the removal of a dead animal beyond the city limits within a reasonable time and to a specified reasonable distance, and in default thereof may deal with the carcass as a nuisance and take *324 it and make such disposition as may be necessary for the public health, these or similar regulations appear to mark the limit of legislative and municipal authority. To justify the seizure and removal of a carcass by virtue of police power, it must be shown that the dead animals are, or will become in some way, dangerous or deleterious to the public health. Therefore all ordinances and regulations which result in depriving the owner of his property in the dead animal without compensation, whether it be by prohibiting him from removing the carcass, or requiring him to pay a public contractor for its removal, or by making it unlawful for any person other than the public contractor to remove and dispose of the carcasses, are in excess of the legislative power, and unconstitutional and void.”
If, as in Section 679 just quoted, “an animal is not per se a nuisance, and is not necessarily dangerous to the public health,” so those portions of animals fresh slaughtered that are entirely clean and in healthful condition, and not affected by contagious diseases, have value — and from the testimony have great value — and an owner can not be deprived of such property without due compensation.
It is contended in this ease by the city that, conceding all this the court has said to be true generally, this plaintiff has not the right to assert such a claim, because he is not in fact, or has not been, and by the terms of the ordinance will not be deprived of property; that such a claim can only be asserted by the various persons from whom property might be under the ordinance taken.
To support this view of the city, it has cited 199 U. S., 306. While the ordinance in that case is very different from the one in question, dealing apparently only with matter that is strictly discarded and rejected matter, while in the ordinance under consideration matter is included that is not per se a nuisance and not necessarily dangerous to the public health, yet it is no doubt the duty of the court to follow that authority and find that plaintiff is not entitled to the relief asked for that reason.
The plaintiff in this case sets out the ordinance, which in part is as follows:
“Section 1683. The director of public service shall collect and dispose of, through the department of public service, all gar *325 bage, hotel and house offal, slaughter-house offal, refuse animal and vegetable matter, dead animals or parts thereof not killed for human food, and animal offal, excepting manure, within the city of Cleveland wherever found.”
The plaintiff sets out in his petition that he has contracts with various persons in the city for the purchase and disposal of slaughter-house offal, and charges further that said contracts, in so far as they relate to butcher shops, meat markets and slaughter houses and slaughter house offal, include the collection by plaintiff and the delivery to him by said parties of the bones, feet and heads of animals which have been slaughtered for human food; and charges that the city of Cleveland, through its heads of departments, has threatened and is about to forcibly prevent plaintiff from purchasing, taking possession of and transporting or manufacturing said slaughter-house offal, and has threatened to and is about to use the police force and sanitary police force to prevent the plaintiff from possessing himself of or transporting to his plant said slaughter-house offal; and that, as a result of such purpose on the part of the city, and said threats, and that in carrying out the ordinance in question, his constitutional rights are invaded, for the reason that such ordinance impairs the obligations of contracts.
The city, in its answer, admits the ordinance, admits that the commodity known as “slaughter-house offal” is included in the ordinance, admits that it does purpose to prevent plaintiff from carrying out such contracts, and is threatening by its police departments to prevent plaintiff from possessing himself of the slaughter-house offal and transporting the same through the streets.
In view of this state of the pleadings, and the proof adduced upon the trial and heretofore referred to, the court is of the opinion that the ordinance is in violation of plaintiff’s constitutional rights in that it is an impairment of his contract rights, and is therefore unconstitutional, and the plaintiff is" entitled to the relief prayed for in this action.
Our own circuit court, in a ease recently decided, in an ordinance substantially like the one in question, has found that such *326 an ordinance is unconstitutional and void in so far as it includes dead animals.
It may well be, if tbe coutt is right in this case, that including slaughter-house offal in the ordinance is unconstitutional as impairing plaintiff’s contractual rights, and that it is unconstitutional in that it includes dead animals, that the legislative body, the city council, may desire to provide a new legislation; but, on the other hand, it may be entirely practical for the city to operate successfully under the present ordinance notwithstanding the finding of the court in this case and the finding of the circuit court in respect to dead animals, and the court will, therefore, not find that the whole ordinance is unconstitutional and void, except in respect to the inclusion of matter denominated slaughter-house offal.
It was developed in this case that plaintiff had contracts for the removal of garbage from apartment houses; that he has an arrangement whereby the janitors, perhaps, collect into one place or into one receptacle all the garbage accumulating from various tenants occupying such apartment houses, and that plaintiff is carrying through the streets of the city such product and disposing of it at his disposal plant.
Experience has clearly demonstrated that the conducting of every household in which meals are prepared for the members thereof must of necessity result in the collection of discarded and rejected matter that is of the kind that has not an appreciable value to the owner. Any household where meals are prepared — and that would include hotels, restaurants, eating houses and boarding houses — must of necessity accumulate some matter of the strictly garbage kind; and any such homes or hotels that do not make such accumulation, which accumulation would be properly disposed of only by the city, is making, of necessity, some disposition of such matter as would be in violation of the legal and constitutional provisions of the ordinances in question. The fact that such collection has some small value does not prevent the city from passing an ordinance giving the city the exclusive right to dispose of such matter.
In the case of Gardner v. Michigan, just quoted, 199 U. S., 325, it is said:
*327 “The court may well take judicial notice that table refuse, when dumped into receptacles kept for that purpose, will speedily ferment and emit noisome odors calculated to affect the public health. Tf, in providing against such nuisance, the owner of such material suffers some slight loss, the inconvenience or loss is presumed to be compensated in the common benefit secured by regulation.”
The court does not, however, mean to say that hotels, restaurants, boarding houses, or even private houses may not keep separately and in a sanitary way portions of food not desired by the owners for table purposes. It is only when the good is mingled with the garbage and offal proper that the whole may be seized upon by the municipality; and this view is amply supported by the authorities. In 68 Conn., 101, it is said:
“A municipal ordinance defined ‘garbage and offal’ as such refuse matter as accumulates in the preparation of food for the table.”
In considering the validity- of the ordinance, which also .licensed a single contractor for its removal and prohibited any person from removing it without a license, Baldwin, J., said:
“Construing this ordinance with the strictness properly applicable to municipal legislation of a penal nature, the term ‘refuse matter’ can only extend to matter which is in fact noisome, or which has been refused and rejected by the owner as wortldess. Meat trimmings, potato parings, speckled apples, and many other things of a like character, might be thrown aside in preparing table dishes, and yet properly utilized afterwards for other purposes.”
And in 123 Mich., 570, the ordinance defined garbage and offal to include every accumulation of animal, fruit, or vegetable matter, liquid or otherwise, that attends the preparation, use, cooking, dealing in, or storing of meat, fish, fowl, fruit, or vegetable, and provided for its disposal in a specified manner. In defining the scope of the ordinance, Long, J., said:
“The ordinance does not attempt to regulate in any manner whatever the disposition of wholesome substances by the householder. It is aimed only at refuse; that is, discarded worthless *328 matter — matter unfit for food. The householder has perfect liberty, under the ordinance, to consume, or to sell or give away, all the leavings of his table or. kitchen that are fit for food; but he is not suffered by the ordinance to have around his premises, in open buckets, pans, pails, or heaps, that which is known as ‘refuse.’ ”
And in the 68 Conn., 101, above quoted, the court say:
“The ordinance does not extend to every thing that is separated and thrown aside in the preparation of food for the table. Whatever of this description is.not abandoned as worthless remains property which, so long as it does constitute a nuisance, may be sold or otherwise disposed of at the will of the owner.”
Clearly, if the good and sanitary is kept apart from the bad and dangerous material, the former is a proper subject for sale as the owner may see fit. It is the mingling that makes it contraband.
In 20 App. (D. C.), 477, it was said that when good food matter is mingled with garbage, it becomes subject to public control in the same manner as garbage properly so-called, notwithstanding that in some instances the owners might be able to dispose of it in its unreduced state as either animal food or manure.
To the extent that plaintiff collects material of the kind just indicated, he is himself, as the court believes, violating the legal portion of the ordinance. Whether, because in the trial of the case it has been disclosed that plaintiff is in this respect violating the ordinance, he is not entitled to the relief asked for, the court is in some doubt; but, on the whole, the court does not believe that he should be deprived of the relief asked for on this account ; and the court finds, therefore, that defendants should be restrained and enjoined from interfering with plaintiff’s business with respect to his purchase and transportation of the matter as hereinbefore indicated by the court.
Decree accordingly.