**CITY OF SAN ANTONIO et al. v. TEAGUE et al.**

No. 9094.

Court of Civil Appeals of Texas. San Antonio.

Oct. 26, 1932.

Rehearing Denied Nov. 30, 1932.

T. D. Cobbs, Jr., W. C. Davis, and Jack Davis, all of San Antonio, for appellants.

T. H. Ridgeway, of San Antonio, for appellees.

SMITH, J.

This appeal turns upon the question of the constitutionality of an ordinance of the city of San Antonio, requiring wholesale dealers in fruits and vegetables to obtain a permit from, and pay a license fee of $50 to, the city as a condition to the operation of such business. At the instance of twenty-five such dealers, the district court enjoined the enforcement of said ordinance, which contains the following provisions:

"1. That it shall be unlawful for any person, partnership or corporation to maintain and operate an establishment for sale at wholesale of fruits and vegetables within the corporate limits of the City of San Antonio, Texas, without first obtaining a license therefor, and payment of a license fee.

"2. The word 'establishment' used in this ordinance shall mean the place, either temporary or permanent, including any vehicle, railroad car, lot stand, room or building, where or in which any person, partnership or corporation subject to this ordinance, shall sell or show for sale, fruit or vegetables.

"3. That every person, partnership or corporation, before opening, maintaining and/or operating such an establishment for the purpose stated shall make application for each establishment maintained and operated, upon a blank to be furnished by the License and Dues Collector and in which application the applicant shall give the following information: Address, number of establishments maintained and operated, nature of business, method of distribution used, whether it be selling direct from a store room, railroad car or other vehicle or from a vacant lot or stand, or otherwise.

"4. That upon filing said application with the License and Dues Collector and paying the License and Dues Collector a license fee of Fifty Dollars for each and every establishment maintained and operated, said License and Dues Collector shall issue a license or licenses to said applicant to operate said establishment or establishments. The fee specified herein may be paid in quarterly installments of $12.50 each. The license shall expire on the 31st day of May after issuance.

"5. Any person, firm or corporation who may violate this ordinance shall be guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not less than $10.00 nor more than $100.00.

"6. Persons, partnerships and corporations engaged in commerce with foreign nations and among the several states and with the Indian Tribes, subject to regulation by the Congress of the United States, and persons, partnerships and corporations engaged in agricultural pursuits, who in person or by agent sell fruit and vegetables grown by such, and who are exempt from payment of occupation tax under the Constitution of the State of Texas, shall be exempt from the payment of the fee and issuance of the license; but if any exemptioner chooses to have a license issued for identification, the License and Dues Collector will issue the same without cost upon satisfactory proof.

"7. This ordinance shall not be construed to repeal any of the health, sanitary or food ordinances of the City of San Antonio, but shall be cumulative thereof.

"8. The fact that the present ordinances of the City of San Antonio are inadequate, and the fact that many establishments are now plying their trade without a license, the fact that fruits and vegetables are now being sold at wholesale in the City of San Antonio, which are inferior in quality, unfit for human consumption, mixed in grade and sold as of a higher grade, the fact that fruits and vegetables are now being stored, kept packed and sold in wholesale establishments which are kept in insanitary conditions and therefore dangerous to the health of the public, and the fact that the health of the citizens of San Antonio needs protection, creates an emergency; and the rule requiring the reading of ordinances on three several days, is hereby suspended; and this ordinance is declared an emergency ordinance and shall take effect from and after its passage and approval."

The power relied upon by the city as authorizing the enactment and enforcement of the ordinance arises from the following provision of the charter of the city:

"Section 99. To license, regulate and inspect all trades, professions, occupations, callings and business carried on in said City whenever and wherever the Commissioners shall deem such regulation, inspection and license necessary or proper for the good order, public health, public safety or general police regulation of said City, and charge license and inspection fees therefor, and such fees shall not be construed as occupation taxes; and for any purpose relating to the business or affairs of the City, to examine or cause to be produced and examined all books, papers, and records of any person or corporation doing any public utility service, and of persons and corporations holding franchises from the City, to take testimony and compel the attendance and examination, under oath of witnesses, and to annul and forfeit such franchise or privilege should any officer, agent or employee of any such corporation or franchise holder refuse to produce such books, papers or records, or give testimony."

▮ The city raises the question of the jurisdiction of the district court, as a court of equity, to restrain the enforcement of a criminal ordinance. We are of the opinion that under the powers of the equity courts, which powers are being constantly if not wisely widened by judicial construction, those courts have jurisdiction to grant the relief accorded appellees in this case only where the ordinance attacked is void upon its face, and the threatened enforcement thereof will necessarily work instant and substantial and irreparable injury to material vested rights of the parties complaining. Surely in every other situation the whole controversy ought to be relegated to courts of law, upon which rest the constitutional power and duty of construing, upholding, and enforcing or striking down and nullifying criminal laws. Ex parte W. W. Sterling, decided by Supreme Court of Texas, October 1, 1932, 53 S.W.(2d) 294, 295. In the able and far-reaching opinion of Judge Leddy, for the Commission of Appeals, in that case, it is said:

"Courts of equity are not concerned with the enforcement of criminal laws. Courts of law are created for this purpose. Courts of equity are concerned only with the protection of civil property rights. Therefore, when a court of equity issues an injunction which operates to stay the hand of law enforcing officers, its primary purpose is not to enjoin the criminal proceeding. That is merely incidental to the main ground upon which equity jurisdiction protects vested property rights from threatened and irreparable injury. Such jurisdiction is exercised solely with reference to the effect of the enforcement of a void law upon vested property rights. Winn v. Dyess (Tex. Civ. App.) 167 S. W. 294; Ex parte Castro, 115 Tex. 77, 273 S. W. 795; State v. Clark, 79 Tex. Cr. R. 559, 187 S. W. 760; Jones v. Whitehead (Tex. Civ. App.) 278 S. W. 305; City of Breckenridge v. McMullen (Tex. Civ. App.) 258 S. W. 1099.

"Under the well-established rules of equity jurisprudence, it is clear that the district judge was without authority to issue the writ of injunction to prevent the enforcement of the law regulating the operation of motor-trucks upon the highways of this state unless the petition for such injunction clearly showed the existence of two facts, viz.: First, that such law is unconstitutional and void; second, that its enforcement constitutes a direct invasion of a vested property right of the complainants. Davis & Farnum Mfg. Co. v. City of Los Angeles, 189 U. S. 207, 23 S. Ct. 498, 499, 47 L. Ed. 778; In re Sawyer, 124 U. S. 200, 8 S. Ct. 482, 31 L. Ed. 402; Box v. Newsom (Tex. Civ. App.) 43 S.W.(2d) 981."

We are of the opinion that the ordinance is not void upon its face, nor does the attack thereon in this case warrant its nullification by a court of equity.

▮ Under now familiar construction, a municipal corporation in the class embracing San Antonio may do anything specifically or by necessary implication authorized in its charter, so long as such action is not in contravention of constitutional or statutory provisions.

It is contended by appellees that the purpose, or at least the effect, of this ordinance, is to impose an occupation tax upon appellees; that it is not merely a regulatory measure, with the incidental imposition of a license fee. It is conceded by the city that it has not the power to impose an occupation tax upon appellees; but, on the other hand, it is contended by it that the ordinance is

regulatory only, and well within the police power of the city.

■■ It is now well settled that, in the exercise of lawful powers, in imposing purely regulatory restrictions upon persons and commerce, the governing board of the municipality has the power to determine the reasonableness as well as the necessity of such regulations propounded by that body, and its discretion in such matters is conclusive and may not be set aside by the courts, except in extreme situations not evident in this case. City of San Antonio v. South Trunk Co. (Tex. Civ. App.) 13 S.W.(2d) 401.

■ The business of storing, distributing, and selling fruits and vegetables is peculiarly subject to regulation by municipalities, and we believe to that end it is within the powers exercisable by the governing board of the city of San Antonio to require all such dealers to first obtain a permit from the proper authority before entering upon such business. It is so provided in the quoted charter provision, and certainly is not in contravention of any constitutional or statutory provision to which our attention has been called.

In this case the city commissioners, in the exercise of their discretion, determined that the regulation of such business had become necessary in the city, for apparently sound reasons set out in the emergency clause of the ordinance hereinabove quoted. Certainly it is not for this court, no more than for the court below, to gainsay the facts or question the existence of the conditions recited in the ordinance, or to substitute the court's judgment for that of the commissioners in such a purely administrative governmental matter. We cannot say, and least of all as a matter of law, that the commissioners acted beyond their wide powers in such matters, which are so clearly within administrative, and obviously without judicial prerogative.

The ordinance was enacted in furtherance of the obligation of the city to exercise every reasonable power to protect and preserve the health of its inhabitants, in which connection it was shown in the city's answer "that prior to the enactment of the above ordinance, many establishments were plying their trade without a license, and fruits and vegetables were being sold at wholesale in such establishments in the City of San Antonio, some of which were of an inferior quality and unfit for human consumption, were mixed in grade, and sold as of a higher grade, and owing to the further fact that fruits and vegetables were being stored, kept, packed and sold in wholesale establishments and in trucks, wagons, stands and stalls, which were kept in insanitary conditions and were therefore dangerous to the health of the public, and as a result thereof, the health of the Citizens of San Antonio needed protection."

Appellees contend that the fee exacted of them under said ordinance amounts to an occupation tax; it being conceded that the city is without the power to impose an occupation tax upon appellees and those similarly engaged. We conclude, albeit with some hesitation, that the contention is not sustained by the case made, to the extent of showing such abuse of the administrative discretion of the commissioners as to require courts of equity to interfere therewith. Hanzal v. City of San Antonio (Tex. Civ. App.) 221 S. W. 237. This court cannot gainsay the implied findings of the commissioners, upon which the ordinance was enacted, that, as expressed in the city's answer: "That the imposition of a license fee of Fifty ($50.00) Dollars upon all persons, partnerships and corporations engaged in the sale of fruits and vegetables at wholesale, is a reasonable fee for engaging in such occupation, and said Fifty ($50.00) Dollars fee or the collection thereof, from each and every one engaged in the sale of fruits and vegetables at wholesale, would not and could not be in excess of the amount of money appropriated and necessary for the proper regulation, inspection and supervision of public health measures and the enforcement of the above ordinance by the governing body of the City of San Antonio and its agents and employees."

■■ Assuredly these findings, if true, as we must assume them to be, fully warrant the imposition of the license fee fixed by the commissioners. It is but just that the businesses which render sanitary and health regulations necessary should bear their proportionate share of the burdens and expenses of such regulations, and the record does not justify the trial court or this court in saying the governing body has placed an unfair share thereof upon appellees and their fellows.

■ Appellees attack the ordinance upon the contention that it is rendered discriminative and invalid by certain exemptions incorporated therein apparently in deference to well-recognized, clearly defined, and sometimes frankly far-fetched prohibitions against interference with interstate commerce. We overrule this contention.

We conclude that the ordinance is not shown to be invalid, and that the trial court erred in taking jurisdiction and granting the injunction. Accordingly, it is ordered that the injunction be dissolved and the bill therefor dismissed, at the cost of appellees in both courts.