## CITY OF AMARILLO et al. v. GARWOOD et al.

### No. 4173.

Court of Civil Appeals of Texas. Amarillo.

Oct. 4, 1933.

Rehearing Denied Nov. 1, 1933.

Underwood, Johnson, Dooley & Huff, of Amarillo, for appellants.

Works & Bassett, of Amarillo, for appellees.

MARTIN, Justice.

In May, 1933, the city of Amarillo passed an ordinance affecting certain persons who handled fruits and vegetables within its corporate limits. The ordinance in question consists of a preamble and eighteen sections. Of these we quote literally the following:

"Whereas, fruits and vegetables are now being sold at wholesale, within the limits of the City of Amarillo, which are inferior in quality, unfit for human consumption, mixed in grade, and sold as of a higher grade than represented. * * *

"Section 1. It shall be unlawful for any person, firm or corporation, to maintain and operate an establishment for sale at wholesale, of fruits and vegetables, for the wholesale distribution of fruits and vegetables within the corporate limits of the City of Amarillo, without first obtaining a license therefor, under the provisions of this ordinance. * * *

"Section 6. The word 'establishment' as used in this ordinance shall mean an establishment which is engaged in buying and selling and/or distributing fruit and/or vegetables at wholesale, and shall mean any building, store room, freight car, wagon, truck or other vehicle, or any vacant lot or stand where such fruit and/or vegetables are kept, stored, packed and/or offered for sale, at wholesale.

"Section 7. The word 'wholesale' as used in this ordinance shall mean any sale or distribution other than by the producer of fruits and/or vegetables to one not the ultimate consumer of an individual unit of such fruits and/or vegetables."

Section 2 thereof provides, in substance, for a license to be issued by the city of Amarillo to each establishment maintained and operated by the licensee. Section 3, for the payment of a license fee of $100 per year for each and every establishment so maintained and operated. Section 8, for the appointment of an inspector or inspectors to enforce the ordinance or the "City Manager shall require other inspectors employed by the City of Amarillo at this time to enforce this ordinance." Section 11 provides for a minimum and maximum fine against every person operating without a license and that every day such person so operates constitutes a separate offense.

Thereafter, upon the petition of appellees, a temporary restraining order was issued against appellants here, who are the city of Amarillo, together with its governing body, its chief of police and police magistrate. Upon a hearing and after answer filed a temporary injunction was issued against appellants restraining the enforcement of said ordinance and returnable to the next regular term of the Forty-Seventh district court of Potter county. From this order the city of Amarillo and its said officers have appealed.

The relators in the court below, who are the appellees here, are thirty-four in number. Their petition discloses, in substance: That they are the owners of trucks engaged in the transportation and sale of fruits and vegetables as a means of livelihood. That such fresh fruits and vegetables are brought from the surrounding territory into the city of Amarillo. That they own some fifty-five trucks of the reasonable value of about $30,-000, which have been equipped for the proper and sanitary handling of fruits and vegetables at great cost. That their respective families are largely dependent upon the transportation and sale of fruits and vegetables in Amarillo for a living. That the enforcement of the ordinance would materially reduce the value of their trucks and equipment and largely destroy their business. Various attacks upon the ordinance are made in the petition filed, all of which we deem unnecessary to here set out.

The petition specifically sets out that said charge of $100 per truck per annum, payable in advance, is prohibitive as to the operation of practically all of plaintiffs' said trucks and also of a "large portion of other trucks owned and operated by other truckers and small stores as above stated," and that said charge is unreasonable, exorbitant, and is an occupation tax and intended as such.

The ordinance under attack here is similar to the one set out in the opinion in the recent case of City of San Antonio v. Teague (Tex. Civ. App.) 54 S.W.(2d) 566. This last case, and that of Mims v. City of Ft. Worth (Tex. Civ. App.) 61 S.W.(2d) 539, dispose of many of the questions raised on this appeal in such

precise and complete manner that we will not here waste space in their discussion.

█ We are passing here only on the action of the trial court in issuing the temporary injunction pending a full and final hearing. The propriety of his action will be "determined from the probability of right and the probability of injury thereto if the injunction be not granted, as shown by the pleadings and evidence addressed to those questions. The substantive rights of the parties are not necessarily nor usually determined upon an application for a temporary injunction." 24 Tex. Jur. p. 179. The trial court having entered a judgment after hearing, it is our duty to sustain his action if there appears in the record here a sufficient showing of a right in appellees to be protected and a threatened impairment or destruction of that right pending a final hearing and these need not be established with absolute certainty on application for temporary injunction. Rosenfield v. Seifert (Tex. Civ. App.) 270 S. W. 220. The courts have some discretion in matters of this character. 24 Tex. Jur. § 211.

We have concluded that appellees have brought themselves within the above rules and that the trial court did not abuse his discretion in granting a temporary injunction pending a final and full hearing of the case on its merits. A discussion of only one phase of this case will, we think, sufficiently demonstrate the correctness of the Trial Court's action.

█ That the city of Amarillo has the legal right to protect the health of the public by proper ordinances under its police power is conceded. It is admitted here that the ordinance in question was passed under the power to regulate in the exercise of its police power, and that the fee exacted is not one for revenue. The power to regulate does not, however, carry with it the right to oppress or destroy a useful and necessary business. McQuillin, Municipal Corporations, vol. 3, p. 458. We quote some of the rules governing this phase of the case:

"In the exercise of the police power for the purpose of regulation, the authority of the municipality is limited to such a charge for a license as will bear some reasonable relation to the additional burden imposed by the business or occupation licensed and the necessary expense involved in police supervision." 3 McQuillin, Municipal Corporations, p. 461.

"Where the exaction is imposed under the power to regulate or in the exercise of police power as distinguished from the power to tax for revenue, as heretofore explained, the general rule obtains that the sum levied can not be excessive nor more than reasonably necessary to cover the costs of granting a license and the exercise of proper police regulations. The nature of the business sought to be con-

trolled and the necessity and character of police regulations are the dominating elements in determining the reasonableness of the sum to be imposed." 3 McQuillin, Municipal Corporations, p. 483, § 1102.

Many authorities are cited by the author in support of this text, including the case of Ex parte Gregory, 20 Tex. App. 210, 54 Am. Rep 516.

█ Looking at the face of this ordinance in the light of all the surrounding facts and circumstances, we are not able to say that the trial court erred in his implied holding that the amount of this fee was unreasonable and the ordinance oppressive and destructive of the property rights of appellees. A hundred dollars for each establishment was exacted, which means that this sum was thought to be necessary for the proper administration and enforcement of this law. The ordinance deals with a useful and necessary business and with a law-abiding class in a city of some forty thousand inhabitants. The record here discloses that it covers a subject already, in a measure, provided for by similar ordinances and that officers already exist who might be able to take over its work. While a trial court is required to presume an ordinance reasonable and valid until the contrary is shown, he is not required to go blind and become as credulous as a child. He might, for instance, in this case have considered that a cost of $100 per capita for every member of a class covered by an ordinance, for its administration and enforcement was entirely unreasonable, and so much so that it amounted to the levy of an occupation tax under the guise of a police regulation. Upon such a basis, and figuring the many individuals within the terms of the multitude of ordinances passed by the average city, if the enforcement of each of these costs $100 per capita for every member of the class within the ordinance, the total would surely run into a staggering sum. If it honestly takes $100 per capita to enforce an ordinance against law-abiding citizens, what mountains of money the city must be spending against the lawless!

In the recent San Antonio Case reported in 54 S.W.(2d) 566, 569, already referred to, Associate Justice Smith, in passing on whether or not $50 per annum, payable quarterly, in the city of San Antonio, and denominated a license fee, amounted in law to an occupation tax, overruled the contention "with some hesitation." Here the fee doubles that exacted in San Antonio.

In this case we are not willing to say that the trial court erred in refusing to pronounce this ordinance reasonable. We are more than doubtful of its validity as a police regulation, and it concededly is invalid as an occupation tax measure; this because no such tax is levied by the state. Hoefling v. City of San An-

tonio, 85 Tex. 228, 20 S. W. 85, 16 L. R. A. 608; State Constitution, art. 8, § 1.

The judgment of the trial court is affirmed.

### On Motion for Rehearing.

It is contended on motion for rehearing that error appears in the action of the court respecting the following matter not touched upon in the original opinion:

Prior to the issuance of the injunction under attack here, the Forty-Seventh district court of Potter county had issued a temporary injunction without any hearing based upon an ex parte petition alleged by appellants to be substantially identical with the one in this case. Thereafter, on motion of appellants, such temporary injunction was dissolved. Immediately thereafter the present suit was filed by relators. To this appellants filed a plea to the jurisdiction of the trial court, claiming a former adjudication of all matters in controversy. To this appellees filed answer, alleging, in substance, that the two petitions were not identical, and averring that the first injunction granted was dissolved in part because the action of the court in granting same was in conflict with the holding of this court in Panhandle Const. Co. et al. v. Plain et ux., 52 S.W.(2d) 504. The trial court impliedly sustained the contention of appellees by overruling said plea. If the dissolution of the first injunction granted was because it was not supported by an appropriate prayer for the character of relief actually granted, and therefore was a void order, it could not be made the basis of a plea of res adjudicata.

An inspection of the record here indicates that the original order for an injunction came within the condemnation of the authority cited above.

Motion for rehearing overruled.