**CITY OF WICHITA FALLS et al. v. KEMP HOTEL OPERATING CO. et al.**

No. 14427.

Court of Civil Appeals of Texas.
Fort Worth.

April 24, 1942.

Rehearing Denied May 29, 1942.

T. A. Hicks, Thelbert Martin, Leslie Humphrey, B. D. Sartin, and H. W. Fillmore, all of Wichita Falls, for appellants.

Bert King, Harold Jones, John Davenport, and Sam B. Spence, all of Wichita Falls, for appellees.

SPEER, Justice.

This appeal involves the validity of an ordinance passed by the City of Wichita Falls, and a contract made by that city with one Green.

Kemp Hotel Operating Company, a corporation, Henry Ford, Steve Ford, and Paul Montgomery, a co-partnership doing business as Holt Hotel, E. A. Burch, Paul Cameron, Floy Freemen, Fleta Freemen, Jess Gary, Roy Click and T. L. Hestand were plaintiffs below. The City of Wichita Falls, Chris W. Jenson, Chief of Police, and L. B. Green were defendants. They will continue to carry that designation, except when necessary to refer to one or more by name.

Plaintiffs sought and obtained injunctive relief against the named defendants from the enforcement of the ordinance and contract and from that judgment the defendants have appealed.

At and prior to all times involved, material to this appeal, the defendant City was organized and operated under Title 28, Chapter 13, now Article 1165 et seq., R.C. S., Vernon's Ann.Civ.St. Art. 1165 et seq., sometimes referred to as the "Home Rule Act". In addition to the provisions of that Act, the City had a charter containing provisions relating to its duties and functions as a municipality. In an effort to comply with the statutory laws and especially the "Sanitary Code" embraced mainly in Article 4477, R.C.S., Vernon's Ann. Civ.St. Art. 4477, and various provisions of its charter, the City, acting through its Board of Aldermen, passed ordinance No. 1326, which, by its terms, among other things, provides for the gathering and dis-

position of garbage and other refuse matter accumulating about homes, business houses and industrial plants. The City was divided into zones; residences, rooming houses, boarding houses and business houses were classified. Minimum and maximum charges on each class in the respective zones were fixed. The ordinance also provided for the collection of all such charges by the City at the time of and in connection with bills rendered for water furnished on meter readings. There was also a provision for receiving bids for the gathering and disposition of such garbage and waste matter under restrictions and reservations in the ordinance. Several bids were received and it was officially determined that Green's was the lowest and best bid, whereupon the City instructed the mayor to make a contract with Green for the removal and disposition of said waste matter.

The nature of the contract made with Green was such that for a term of five years, if he performed the contract, he was to have the exclusive right to gather and dispose of the garbage. We shall have more to say about the contract.

The ordinance contained a penal provision against all persons, other than the one to whom the contract should be let, who gathered and hauled garbage.

Since the passage of the ordinance and letting the contract with Green, plaintiffs Gary, Click and Hestand have been arrested and prosecuted for violating the ordinance and are threatened with further prosecution if they continue to violate it. Other named plaintiffs were operators of hotels, coffee shops, cafes and eating places where their waste matter had a value which they sold to persons for varying amounts. The garbage when so sold was used to feed hogs.

There are many grounds alleged as to why the ordinance and contract were void and their enforcement should be enjoined. The trial court enjoined their enforcement but the judgment does not indicate the grounds upon which they were declared void. After the usual provisions of appearances and a hearing, it was decreed by the court that they (the ordinance and contract), "are declared void and of no force and effect". The judgment concludes with the order enjoining the City and its officers from enforcing the ordinance and granting plaintiffs the injunctive relief sought against Green.

Upon application, this case was advanced on our docket for submission and the briefs of all parties indicate that a disposition of the appeal should be determined upon whether or not the contract with Green and the ordinance upon which it was based constituted a franchise to Green for the operation of a public utility. It is obvious, that if there was a franchise granted for operation of a public utility, it is invalid, since the provisions of the charter controlling such matters were not complied with. Plaintiffs (appellees) contend that it was such a franchise and defendants (appellants) deny it.

Plaintiffs below rely upon the provisions of Section 121 of the charter, which reads:

"All public utility franchises and all renewals, extensions and amendments thereof shall be granted or made only by ordinance. No such proposed ordinance shall be adopted by the Board of Aldermen until it has been printed in full and until a public written report containing recommendations thereon shall have been made to the Board by the City Manager, or by the Mayor if there be no City Manager, until adequate public hearings have thereafter been held on such ordinance and until at least two weeks after its official publication in final form. No public utility franchise shall be transferable except with the approval of the Board of Aldermen expressed by ordinance and copies of all transfers and mortgages or other documents affecting the title or use of public utilities shall be filed with the City Clerk within ten days after the execution thereof."

In support of their contentions, in their briefs, plaintiffs say: "The point we urge here is nothing more nor less than that the City had a charter providing how this thing (granting a franchise for the operation of a public utility) could be done, and the council without attempting to comply with the charter, proceeded to undertake to do it in their own way by an ordinance and contract, and without compliance with the provisions of the charter."

We may well ask and answer the questions: (1) Do the gathering and disposition of garbage constitute a public utility? And (2) Do the ordinance and contract with Green amount to a franchise?

In 51 C.J., § 1, it is said: "A 'public utility' has been described as a business organization which regularly sup-

plies the public with some commodity or service such as gas, electricity, etc. * * *." The same authority states in substance that the term has not been defined and that it would be difficult to construct a definition that would fit all cases. It seems that one of the distinguishing characteristics of a public utility is the devotion of private property by the owner to a service useful to the public and which the public has a right to demand so long as it shall be continued, with reasonable efficiency, under proper charges. 34 Tex.Jur., p. 702, § 3, also points out the difficulty in defining the term. There is little doubt that a service by an individual, private corporation or municipality, could be such in the performance of a health regulation within a given area, that it could be classed as a public utility. This conclusion would not be altered by the fact that a different type of service would be required in its performance. Illustrative of this is the fact that it is common knowledge that certain parts of said waste matter may be taken away by means of a sewerage system, while other parts must of necessity be deposited in containers and hauled away at intervals. It is the public service of ridding premises of waste and equipment used in connection therewith which constitute the public utility.

In Moore v. Logan, Tex.Civ.App., 10 S.W.2d 428, writ denied, the court had under consideration whether or not the gathering of garbage as a health measure was a public utility. Under the facts of that case (somewhat different from those before us) it was held that the gathering of garbage in a city constituted a public utility and that its supervision came within the duties enjoined by the City upon the superintendent of public utilities instead of the mayor, who, in a broad sense, is the general supervisor of the city and all its activities. Upon the other hand, it is perceivable that when the Sovereign State in this jurisdiction declares what type of service shall constitute a public utility as contained in Article 1416 et. seq., R.C.S., courts are without authority to so classify others. The point last mentioned is strongly intimated, if not directly so held, in Gulf States Utilities Co. v. State, Tex.Civ. App., 46 S.W.2d 1018, writ refused. Those primarily interested in the distinction drawn between the two cases cited, may read with profit a discussion to be found in 12 Texas Law Review, page 89.

It would profit little to speculate as to where the line of demarcation should be drawn between services of a quasi public nature, rendered, which cannot be classed as a public utility and those to be rendered under the ordinance and contract before us, which we are inclined to classify as a public utility. We have concluded that for lack of a better guide, what was said in Moore v. Logan, supra, is applicable here, and that the performance of the ordinance and contract constitutes a public utility.

It will be observed that by the provisions of the charter above quoted that all "Public Utility Franchises" shall be granted only after a compliance with that provision in the charter. It must follow, that even if the City of Wichita Falls did promote by the ordinance and contract a public utility, still unless a franchise was granted thereby, the procedure would not be invalidated for lack of a compliance with charter provisions.

A franchise, as the term is to be construed in the instant case, is little less understandable than that of "Public Utilities". Whether or not an instrument, ordinance or contract amounts to a franchise depends largely upon the manner of its performance in compliance with its terms. It has been said that a franchise is usually regarded as a special privilege conferred by the government (the municipality in this case) on individuals which does not belong to them and other citizens as a common right. A franchise, as such, is essentially property and will be safeguarded by the law in all respects as other property. It being an incorporeal hereditament, it is subject to sale and disposition by the owner. Every franchise carries with it certain privileges, but it does not follow that privileges bought and paid for necessarily amount to a franchise. 19 Tex. Jur., pp. 875, 876, §§ 2 and 3.

As we view the ordinance passed and the subsequent contract made thereunder with Green, it was a means chosen by the governing body of the municipality to keep the city clear of deleterious substances for the promotion of health and to prevent the spread of disease. In the absence of a fraudulent design or purpose, the judgment of the City's governing body in making the choice as it did will not be reviewed by the courts. The City, acting through its Board of Aldermen, had the right—indeed, it was its imperative duty— to provide some means of accomplishing

the end sought. It could have provided for gathering garbage by means of its own employees supplied with proper equipment. We also hold that it could, with equal propriety and authority, employ an individual or corporation to perform the necessary functions in carrying out the plan. The City fixed the price chargeable to those to be served, and obligated itself to make the collection of such charges and in turn agreed to pay Green such amounts as it collected. The contract reflects that for the duties to be performed by the City in connection with the enforcement of the sanitary measures so enacted, it was to receive from Green $250 per month. We are not concerned with whether or not the contract was a provident one; it evidently was one which the City thought proper. The whole contract is replete with reservations of supervision of the work by the City through the facilities of its health department. There is no contractual relationship between Green and those whom he is to serve. If the heaviest payers were to become delinquent, Green could not properly make demand of them for payment; he must look alone to the City for his compensation. The City only could enforce payment of the charges made for the service; Green was required to execute and keep effective a good and sufficient bond for the performance of the contract. He could not sell, transfer or assign any of the rights acquired by its terms. We conclude therefore that neither the ordinance nor the contract, nor the two combined, constituted a franchise to Green. It follows, then, that they were not void because the provisions of Section 121 of the charter were not observed.

If it could be said that it was necessary for the charter to provide for authority of the City to pass such an ordinance as it did, a thing unnecessary for us to determine, section 148 of the charter provides, in part: "The Board of Aldermen shall further have the right by ordinance to adopt and prescribe rules and regulations for the handling and disposition of all garbage, trash and rubbish within the City of Wichita Falls, and shall further have the right to prescribe that the city alone shall remove all garbage, trash and rubbish, and shall have the right to fix charges and compensation to be charged by the city * * *."

It appears that the ordinance was passed and the contract made to promote public health and to prevent the spread of disease. This duty is imposed upon the City by statutory law. It had no option but to comply with these provisions. In this respect the whole scheme constituted a governmental function. The principle announced and the statutory provisions requiring it will be found in City of Fort Worth v. George, Tex.Civ.App., 108 S.W. 2d 929, writ refused. See, also, City of Dallas v. Smith, 130 Tex. 225, 107 S.W.2d 872.

In view of the fact that the judgment of the trial court does not indicate upon what ground the ordinance was held void and its enforcement enjoined, we think it pertinent to add these further observations: Those plaintiffs in this case who operated eating places and had a property right in the waste food products which they could sell for swine food, could not assert those rights as against the imperative duty of the city to provide adequate protection to the health and welfare of the general public. Private rights in such instances are subordinate to those of the public. City of Breckenridge v. McMullen, Tex.Civ.App., 258 S.W. 1099; Gardner v. State of Michigan, 199 U.S. 325, 26 S.Ct. 106, 50 L.Ed. 212.

Again, the ordinance which carries a penal provision for its violation is not void upon its face; its validity is dependent upon whether or not its passage was in violation of the city charter. It seems to be the settled law in this state that courts of equity will not enjoin the enforcement of a penal ordinance unless its invalidity is apparent upon its face and its threatened enforcement will work substantial and irreparable injury to those against whom it is enforced. Where the penal ordinance is not void upon its face, as in this case, its validity is to be determined by courts of law and not equity. City of San Antonio v. Teague, Tex.Civ.App., 54 S.W.2d 566, writ refused; Ex parte Sterling, 122 Tex. 108, 53 S.W.2d 294.

For the reasons stated, we hold that the ordinance and contract were not void for want of compliance with the provisions of the city charter in the respects herein set out, and that the trial court erred in so holding and in issuing its writ of injunction against their enforcement. The judgment of the trial court is therefore reversed and judgment here rendered for defendants dissolving the writ of injunction

issued by the trial court, and upholding the validity of said ordinance and contract, empowering defendants the full right of complete enforcement thereof. Reversed and rendered.