CITY OF SAN ANTONIO v. SAN ANTONIO IRRIGATION COMPANY.

No. 5086.   Decided January 9, 1929.
(12 S. W., 2d Series, 546.)

*Joseph Ryan, Thomas D. Cobbs, Jr.,* and *Bruce Teagarden,* for appellant.

The first question should be answered yes, because the members of the City Council of the City of San Antonio in office at the time the contract in question was entered into had the power under the Constitution and laws of the State and under the provisions of the City Charter to enter into said contract so as to bind their successors in office thereto during the period stipulated in said contract, to-wit, 99 years.   Revised Statutes, Art. 4444; Revised Statutes of 1925, Sub. 28 of Art. 1302; Revised Statutes of 1925, Art. 1439; Georgia Ry. & Power Co. v. Decatur, 262 U. S., 432; Hanzal v. City of San Antonio, 221 S. W., 237; Harris Revised Charter, 1899, Sec. 203-B, p. 50; California Reduction Co. v. Sanitary Reduction Works, 199 U. S., 306; City of Brenham v. Halle & Seelhorst, 153 S. W., 347; City of Ft. Wayne v. Combs, 107 Ind., 75, 57 Am. Rep., 82; City of Marlin v. Criswell, 292 S. W., 910; Corpus Juris, Vol. 43, pp. 203–208; Cyc., Vol. 28, p. 917; McBean v. Fresno,

112 Calif., 159, 53 Am. St. Rep., 191; McQuillin on Municipal Corporations, Vol. IV, Sec. 1428, pp. 3028–3030; McQuillin on Municipal Corporations, Secs. 1443 to 1445; McQuillin on Municipal Corporations, Vol. IV, Secs. 1434–1435, and Sec. 1438; Opelika v. Opelika Sewer Co., 265 U. S., 285; Southern Utilities Co. v. City of Palatka, Fla., 268 U. S., 232.

The contract is of such nature as the courts may enforce specific performance of its provisions, and the Second Questions should be answered, "yes." Hubbard City v. Bounds, 95 S. W., 69; Jones v. Parker, 163 Mass., 564, 47 Am. St. Rep., 485; Joy v. City of St. Louis, 138 U. S., 1; Franklin Tel. Co. v. Harrison, 145 U. S., 459; Bay City Irrig. Co. v. Sweeney, 81 S. W., 545; City of Marlin v. Criswell, 292 S. W., 910; City of Tyler v. St. L. S. W. R. Co., 91 S. W., 1; Cumberland T. & T. Co. v. City of Hickman, 111 S. W., 311; 3 Elliott on Contracts, sec. 2322; Municipal Gas Co. v. Lone Star Gas Co., 259 S. W., 684; New River Lumber Co. v. Tennessee Ry. Co., 191 S. W., 335; Prospect Park & C. I. R. Co. v. Coney Island & B. R. Co., 26 L. R. A. 611, 144 N. Y. 152; Union Pac. R. Co. v. C., R. I. & P. Co., 163 U. S., 564; L. & N. R. Co. v. Miss. & T. R. Co., 22 S. W., 920.

*Boyle, Wheeler & Gresham* and *Dodson & Ezell,* for San Antonio Irrigation Co., appellee.

The members of the city council of the City of San Antonio in office at the time the contract in question was entered into did not have the power under the Constitution and laws of the state and under the provisions of the city charter to enter into said contract so as to bind their successors in office thereto during the period stipulated in said contract, to-wit, 99 years.

The city council could not bind itself or its successors by a perpetual contract or by one which lasted an unreasonable length of time. The contract in question being for a term of 99 years, is one which lasts for an unreasonable length of time. Therefore, said question should be answered in the negative.

The city council could not delegate to private individuals or corporations any of its governmental or discretionary functions conferred upon it by the legislature; neither could it barter or contract away the present or future control of the disposal of its sewage, and therefore could not enter into a contract fixing unalterably during the time of the franchise, 99 years, the method, manner and place of disposing of its sewage; and the contract in question, if valid, would

bind the successors in office to the city council in 1901 to the specific method, manner and place of disposing of the sewage, as therein provided, and therefore the city council in 1901 did not have the power to make the contract involved, and for that reason question No. 1 should be answered in the negative.

The preservation of the public health in the exercise of the police power is an imperative duty imposed upon a municipal corporation, and its free exercise, by adopting such means and methods and disposition of its sewage from time to time as would best promote the public health, may not be prevented by an absolute contract for 99. years; and if the contract in question should be held valid it would prevent the exercise of this power and prevent it from performing the duty resting upon it under the law for the balance of the term, to-wit, three-quarters of a century. For that reason the city did not have the power to enter into the contract and question No. 1 should be answered in the negative.

The parties having attempted to contract for the disposal of the sewage in a certain manner, method and place, the present city council, nor any future city council, could not adopt any other method, manner or place of disposing of the sewage without violating the terms of the contract. If the contract in question should be held valid it would prevent the present city commissioners, as well as all future commissioners throughout the term, from exercising their governmental powers in establishing such regulations as to the manner, method and place of disposing of the sewage as might best promote the public health of the city. Therefore, the city council in 1901 did not have the power to enter into the contract in question, and question No. 1 should be answered in the negative.

The contract submitted shows upon its face that it was an attempt on the part of the city council in 1901 to contract away and surrender for an unreasonable length of time, to-wit, 99 years, its legislative, governmental and discretionary power and duty respecting the disposal of the sewage of the city, which is the most important part of the sewerage system, for without such disposal system, the sewerage system could not be operated at all; and therefore such attempted contract was and is contrary to public policy, and for that reason the city council had no power to make the same and question 1 should be answered in the negative.

Authorities in support of foregoing propositions under first question certified.

Brenham v. Water Co., 67 Texas, 555; Britton v. New York, 21 How. Pr., 251; City Charter, Sections 60, 90, 203, 203B; City of Ft. Worth v. First Baptist Church, 268 S. W., 1016; City of San Antonio v. Diaz, 62 S. W., 549; City of San Antonio v. Pizzini, 58 S. W., 635; City of San Antonio v. Smith, 59 S. W., 1109; Dillon on Municipal Corporations, Sec. 245, p. 463; Ennis Water Wks. v. City of Ennis, 105 Texas, 71; Le Feber v. West Allis, 97 N. W., 203; McQuillin, Municipal Corporations, Vol. 1, Sec. 382, p. 842, Vol. 3, Sec. 1159, p. 2579; Marshall v. Allen, 115 S. W., 849; Mitchell Realty Co. v. West Allis, 35 A. L. R., 402; Olyphant Sewer Drainage Co. v. Olyphant. 61 Atl. 72; Pearson v. Towhy, 36 A. L. R., 1119; 19 R. C. L., Sec. 104, p. 797, Sec. 105, p. 798; State of Minn. v. Minnesota Trans. Ry. Co., 50 L. R. A., 656; Stifel v. Hannan, 123 S. E., 438; Thrift v. Elizabeth City, 44 L. R. A., 528; Uvalde v. Uvalde Elec. Co., 235 S. W., 625; Weaver v. Canon Sewer Co., 70 Pac., 953; Westminster Water Co. v. Mayor, 56 Atl., 991; Waterbury v. Laredo, 68 Texas, 565.

On second question certified.

Said contract is not such that the court can, or should enter a decree for the specific performance thereof. Lone Star Co. v. Railway, 99 Texas, 434; 25 R. C. L., page 280, Secs. 82 and 169; Leonard v. Board of Directors, 94 S. W., 922; Marble Co. v. Ripley, 77 U. S., 10; LaHogue Drainage District of Ill. v. Watts, 179 Fed., 690; Carrico v. Stevenson, 135 S. W., 260; Houston Elec. Co. v. Glen Park, 155 S. W., 965; Brown & Sons v. Boston & Main, 76 Atlantic, 692; Pacific Elec. Ry. v. Campbell, 94 Pac., 923; Atlanta & West Point Co. v. Speer, 79 Amer. Decisions 305; Beckham v. Munger, 185 S. W., 911; American English Encyclopedia, Second Edition, Vol. 26, pages 15 & 16; 36 Cyc., pages 576–579–588–589.

*S. G. Newton, Walter P. Napier, Clinton G. Brown,* and *Howard Templeton,* for appellees Charlotte N. Cassin, Cora S. Ogden, S. J. Brooks, and Edward Cassin.

The City Council of 1901 did not have the power, under the Constitution and laws of the State and the charter of the City, to enter into the contract in suit so as to bind their successors in office thereto during the period stipulated in said contract, to-wit, ninety-nine years.

The rule that the City cannot make a contract which shall cede away, control or embarrass its legislative or governmental powers, or which shall disable it from performing its public duties, is a

universal rule and is too well established to admit of debate or controversy. Ill. & St. L. R. R. & Canal Co. v. St. Louis, 12 Fed., Cas., 7007; McQuillin, Mun. Corp., Secs. 382, 1169, 2691; McQuillin, Mun. Ord., p. 130; City of Brenham v. Water Co., 67 Texas, 542; Ennis Water Works v. City of Ennis, 105 Texas, 63; City of Ft. Worth v. First Baptist Church, 268 S. W., 1016; City of Marshall v. Allen, 115 S. W., 849; Waterbury v. City of Laredo, 68 Texas, 565; City of Paris v. Sturgeon, 110 S. W., 459; Foster v. City of Waco, 255 S. W., 1104; Lowrey v. City of Lexington, 75 S. W., 202; Shifel v. Hannan, 123 S. E., 428; Horkan v. City of Moultrie, 71 S. E., 785; Flynn v. Little Falls, etc., Co., 77 N. W., 38; Roanoke Gas Co. v. City of Roanoke, 14 S. E., 665; State v. Minnesota Transfer Ry. Co., 83 N. W., 32; Long v. City of Duluth, 51 N. W., 913; City of Oakland v. Carpentier, 13 Cal., 540; Town of Temple v. Corbell, 147 Pac., 745; Chase v. City Treasurer, 55 Pac., 414; Grady v. City of Greenville, 123 S. E., 494..

If said contract was legally entered into and binding upon the parties, then it· is not of such nature as the courts may enforce specific performance of its provisions by the contracting parties. 36 Cyc., pp. 576, 579, 580, 581, 585, 587 and 589; Lone Star Salt Co. v. Railway Co., 99 Texas, 434; Texas Pacific Coal & Oil Co. v. Barker, 252 S. W., 809; T. & P. Ry. Co. v. Marshall, 136 U. S., 293; Blue Point Oyster Co. v. Haggenson, 209 Fed., 278; Sewerage & Water Board of New Orleans v. Howard, 175 Fed., 555; Tombigbee Valley R. Co. v. Lumber Co., 47 So., 88; American Laundry Co. v. E. & W. Dry Cleaning, 74 So., 58; Lewis v. Vanmeter Lumber Co., 51 So., 459; Black Diamond Coal Co. v. Jones Coal Co., 76 So., 43; Brown v. B. & M. R. R. Co., 76 Atl., 692; Cohalan M. Co. v. Heating Co., 193 Pac., 210; Rev. Stat., Art. 2317.

MR. JUDGE NICKELS delivered the opinion of the Commission of Appeals, Section A.

### STATEMENT OF THE CASE.

San Antonio (a home-rule city) has charter power "to establish, erect, construct, regulate and keep in repair   *   *   *   sewers, and to regulate the construction and use of the same," etc.

In execution of that power the City constructed (within its territory) "underground sanitary sewers, drains, canals" and an "outfall",—terminus of the latter being outside the City's territorial limits. Sewage for passage through those facilities was provided by "householders in said city" who made "connections".

As a means of accomplishing disposal of sewage arrangement was made in October, 1901, (with predecessors in interest of Appellees) exhibited in instrument of contract in these words:

"WITNESS this contract, made and entered into this day, between the City of San Antonio, a municipal corporation created by the Legislature of the State of Texas, in the County of Bexar, in said State, represented by Marshall Hicks, its Mayor, being duly authorized to do so, party of the first part, and R. H. Russell, J. A. Simmons and associates, their successor or assigns, parties of the second part, as follows, to-wit:

"1. It is hereby stipulated and agreed by and between said parties that the parties of the second part are to construct an open ditch, with all the necessary flumes, beginning at the terminus of the present outfall sewer, situated upon what is now known as the "sewer farm", along the right-of-way obtained, and to be obtained by the said party of the first part, said ditch to be constructed in a substantial manner so as to retain the waters therein and prevent their escape (provided that the ditch and dam herein provided for shall be constructed according to plans which shall be approved by the special sewer committee, and the City Engineer) the work to be commenced within ninety days from the acceptance of this contract.

"2. It is further stipulated and agreed by and between said parties that the parties of the second part are to construct a good and serviceable dam at Mitchell Lake, sufficient to contain the surplus sewerage of the City of San Antonio during the term of this contract; all of the work under this contract to be completed within one year from the acceptance of this contract.

"3. It is further stipulated and agreed by and between said parties that the parties of the second part shall, beginning at the time of the completion of said ditch and dam, take exclusive charge and control of all the sewerage coming through the present outfall sewer and all that may come through any additional outfall sewers that may be constructed hereafter by the City of San Antonio and running parallel to the present outfall sewer, and convey the same through the ditch to be constructed by the parties of the second part, and to dispose of said sewerage by broad irrigation along the line of said ditch and below it; and said parties of the second part hereby guarantee to so dispose of said sewerage that it will neither pollute the natural waters of the country nor become a nuisance.

"4. It is further stipulated and agreed by and between said parties that the parties of the second part shall recognize, and shall be

authorized to enforce, all contracts made heretofore, or that may be necessary to be made hereafter to complete the right-of-way, by the City of San Antonio, for water rights along the right-of-way of said ditch.

"5. It is further stipulated and agreed by and between the said parties that the parties of the second part shall set aside the place known as Mitchell Lake as a reservior to be used·as a deposit for all surplus sewerage not used for irrigation.

"6. It is further stipulated and agreed by and between said parties that the parties of the second part shall care for and maintain the said ditch and keep the same clean, and to rebuild such portions as may be necessary, during the duration of this contract; and should the sewerage of the City of San Antonio sufficiently increase in volume so as to make it necessary, then the said parties of the second part agree either to enlarge said ditch or to construct another ditch parallel with the one herein contemplated and upon the same right-of-way.

"7. It is further stipulated and agreed by and between said parties that, in consideration of the faithful performance by the parties of the second part of the above stipulations, the said parties of the second part shall have the right, and the same is hereby granted by the party of the first part, to the exclusive use of all the sewerage now or hereafter running through the present outfall sewer and through any additional outfall sewers that may be built hereafter parallel to the present one, for the purpose of irrigation, save and except such sewerage as had been already contracted for by the party of the first part in payment of the right-of-way of said ditch, and such as may hereafter be contracted for in order to complete the acquisition of the said right-of-way for said ditch from said sewer farm to Mitchell Lake.

"8. It is further stipulated and agreed by and between said parties that upon the completion of said ditch and dam the party of the first part is to convey to the parties of the second part, their successors or assigns, all its rights, title and interest in and to the right-of-way obtained and to be obtained for said ditch, subject, however, to all the terms of this contract.

"9. It is further stipulated and agreed by and between said parties that the party of the first part shall at its own expense, cause to be made all the surveys, data, etc., necessary for the letting of the contract for the building of said ditch; but the parties of the second

part are to pay the expense of all the engineering work during the building of said ditch and dam.

"10. It is further stipulated and agreed by and between said parties that this contract shall remain in force for the term of ninety-nine years, provided the parties of the second part faithfully comply with all of the agreements herein; otherwise, the City of San Antonio may, at its option, declare same null and void.

"11. It is further stipulated and agreed by and between said parties that in case the work on said ditch does not begin in a substantial manner within ninety days from the signing of this contract, then the City of San Antonio may, at its option, either waive said time or terminate this contract, or require the payment of one thousand dollars as damages for delay.

"12. It is further stipulated and agreed by and between said parties that if the said work is not completed within one year from the acceptance of said contract, then the parties of the second part will pay to the party of the first part the sum of fifty dollars ($50.00) per day as liquidated damages by reason of said delay; said sum of fifty dollars ($50.00) per day being agreed upon in advance as fair and just, owing to the difficulty in determining the exact amount or damages which may be caused, and for the further reason in order that it may be definitely understood that time is one of the important elements of this contract.

"13. It is further stipulated and agreed by and between said parties that in order to secure the faithful performance of this contract by the parties of the second part, their successors or assigns, the party of the first part reserves to itself a lien on the said right-of-way, ditch and lake and dam; and in case of a breach of said contract by said parties of the second part, the party of the first part may foreclose its lien for the amount of its damages by reason of said failure to perform on the part of the parties of the second part, unless said damages are fully paid off and discharged prior to the sale under said foreclosure; and this condition and the terms of this contract shall run with the land into whomsoever's hands it may come.

"14. It is further stipulated and agreed by and between said parties that upon the completion of said ditch and dam the party of the first part shall convey to the parties of the second part the right-of-way through said sewer farm of twenty-five (25) feet on each side of the outfall sewer, and that during the progress of said work the parties of the second part shall have all the rights of ingress and

egress to said sewer farm for the purpose of carrying out the terms of this contract.

"15. It is further stipulated and agreed by and between said parties that the parties of the second part are to recognize the rights of the present lessees of the said sewer farm to the use of said sewer water until the completion of said ditch and dam, but said parties of the second part shall be entitled to, and are hereby granted the rent accruing to the party of the first part from the said lessees of the sewer farm from the time of the completion of said ditch and dam until the expiration of said lease of Hamilton & Co.

"16. It is further stipulated and agreed by and between said parties that the parties of the second part are to remove said water from the sewer farm into said ditch immediately upon the expiration of said lease of said sewer farm".

The parties performed the obligations of the contract up to a date shortly prior to filing of the present suit by the City. According to averments made (which are taken as true) appellees are now failing and refusing and propose to continue to refuse to perform in that "Mitchell Lake" and "flumes and ditches," are not sufficient to cause disposal (in the agreed manner) of sewage in present and immediately future volume as it comes from the "outfall" mentioned. The result, actual or threatened, is said to be "pollution of Medina and San Antonio rivers and arroyos and creeks leading to the same", etc., in the neighborhood, and general "nuisance" and imperilling of "health, lives and property." Relief is sought:

"Plaintiff therefore prays that all the defendants be cited to appear and answer hereto, that upon final hearing hereof, plaintiff have judgment decreeing specific and full performance of said contract, and that they be commanded to carry out the same in letter and spirit, and permanent injunction restraining defendants, jointly and severally, from breaching said contract and from failing to perform the same according to the tenor and effect thereof, and for such orders and decrees, and for such general and special relief as may be necessary or proper in the premises, and for all costs of suit."

Appellees interposed what amounts to a general demurrer. Upon hearing of the demurrers it was "agreed * * * San Antonio Irrigation Company has in its * * * answer * * * tendered" to the City "a special warranty deed * * * to all the property, rights", etc., "conveyed" (under the contract) "to said * * * Irrigation Company by the said City * * * by deed

dated May 16, 1903." Tender of value of use, profits, etc., of the property, sewage and "rights" under the contract, however, does not appear.

The demurrer was sustained. The City appealed. The case is now pending in the Court of Civil Appeals, Fourth District, and that Court has certified questions as follows:

1. Did the members of the City Council of the City of San Antonio in office at the time the contract in question was entered into, have the power, under the Constitution and laws of the State, and under the provisions of the City Charter, to enter into said contract so as to bind their successors in office thereto during the period stipulated in said contract, to-wit, Ninety-nine years?

2. If said contract was legally entered into and binding upon the parties, then is it of such nature as the Courts may enforce specific performance of its provisions by contracting parties?

### OPINION.

1. We merely assume appellees are in a position to raise the questions propounded. See,—Fink v. City of Clarendon, Tex. Civ. App., 282 S. W., 912; Interstate Con. St. Ry. Co. v. Mass., 207 U. S., 79, 12 Ann. Cas., 555; International & G. N. Ry. Co. v. Anderson County, 246 U. S., 424; 6 R. C. L., pp. 94–95 and cases there cited.

2. For aught that appears, performance of the duties assumed by appellees has precluded danger to "health", etc., and will in the near or the distant future continue to do so, since there is a "guarantee to so dispose of said sewerage that it will neither pollute the natural waters of the country nor become a nuisance". Nor can it now be said that the obligation is without possibility of performance. If it should prove so, or if appellees persist in refusal to perform the obligation, the contract privileges are revocable by the City.

But if the prescribed means of disposal shall of itself become a nuisance or changing conditions otherwise shall require different methods, etc., the general police power (Mugler v. Kansas, 123 U. S., 623) or that branch of it called "eminent domain" (Cincinnati v. Louisville, etc., R. Co., 223 U. S., 390) may competently be exerted in public protection,—in the general theory that the continued user of the rights lawfully acquired has justly become malum prohibitum (Mugler v. Kansas) and in the special phase upon taking of the contract itself for the public use (Cincinnati v.

Louisville, etc., R. Co.) upon presupposition of its validity and continued existence and in rememberance that all contracts are made in view of the superiority of "eminent domain" (Galveston Wharf Co. v. Galveston, 260 U. S., 473).

Perforce, there has been no barter or sub-delegation of authority whose user and continued availability is essential in the public welfare.

3. The charter grant mentioned in the "Statement of the Case", supra, in terms relates to facilities of sewage and not to that for whose passage the facilities are to be provided. So,—the grants of authority "to abate nuisance" and to "promote health or suppress disease" are in the most general of terms.

In consequence: (a) There is implied authority to arrange for ultimate disposal of sewage (California Reduction Co. v. Sanitary Reduction Works, 199 U. S., 306); and (b) lack of direction as to manner of exercise of that power. Sound discretion, then, was lodged in the City's councilmen to determine what means should be employed for disposal of sewage and safe-guarding of health in that regard. That discretion was not bargained; it was used in making the contract. Moore v. Coffman, 109 Texas, 93, 200 S. W., 374; Black v. Strength, 112 Texas, 189, 246 S. W., 79; Wright v. Allen, Tex. Civ. App., 257 S. W., 980, 985. Period of time in which the arrangement should exist was a subject of discretion and, of itself alone, a matter beyond judicial control. California Reduction Co. v. Sanitary Reduction Works, 199 U. S., 306, 317.

4. Appellee's obligation is to dispose of what sewage is offered at or from the one "outfall" mentioned and at or from such other "outfalls" as may be constructed "running parallel to the present outfall sewer." No such additional "outfall" has been constructed, and there is not a stipulation binding the City to construct one or more. Apparently the City is free to build or to refrain from building new "outfalls" at any place or to build them and use them (at least in respect to sewage beyond capacity of the present "outfall") as it sees fit at any place. If conditions arise requiring additional "outfalls" (not "parallel to the present" one) and they be constructed, their sewage will be outside the stipulations. Thus two things were provided for: (a) Means of remedying bad conditions arising out of the present arrangement or as incident to growth, etc., of the City's population, etc., (b) avoidance of the monopolistic conditions denounced in City of Brenham v. Brenham Water Co., 67 Texas, 555, 4 S. W., 143, Ennis Waterworks v. City of Ennis, 105 Texas, 71, 144 S. W., 930, and other like cases,

even if the anti-monopolistic terms of our Constitution have relation to the subject of this contract.

5. While sewage has elements of value and may be subject to commerce, its inherent qualities are such as to warrant its seizure and complete destruction by or under State or municipal authority. California Reduction Co. v. Sanitary Reduction Works, supra. Its purchase (or receipt otherwise) from a city is not of common liberty or in virtue of right given by law. An entirely different situation is presented in regard to sale, etc., of useful and innocent articles to consumers,—water, e. g.; as viewed in City of Brenham v. Brenham Water Co., supra, Altgeld v. City of San Antonio, 81 Texas, 436, 13 L. R. A., 383, 17 S. W., 75, Edwards County v. Jennings, 89 Texas, 620, 35 S. W., 1053, Ennis Waterworks v. City of Ennis, supra. In City of Brenham v. Brenham Water Company it is plainly recognized that there are "certain classes of exclusive privileges which do not amount to monopolies" (p. 561), and, in our opinion, this "privilege",—so-called—is one of them. Cf.-Ft. Worth & D. C. Ry. Co. v. State, 99 Texas, 34, 70 L. R. A., 950, 87 S. W., 341; Lewis v. Weatherford, M. W. & N. W. Ry. Co., 36 Tex. Civ. App., 48 (writ denied), 81 S. W., 112; Chas. Scribners Sons v. Marrs, 114 Texas, 11, 262 S. W., 722.

6. The matters considered require an affirmative answer to Question No. 1. Ennis Waterworks v. City of Ennis, supra; California Reduction Co. v. Sanitary Reduction Works, supra.

7. "Public policy" (i. e.,—"interest of others than the parties"), for reasons given, does not intervene to preclude specific performance within the rule announced in such cases as Texas & P. Ry. Co. v. Marshall, 136 U. S., 393, 10 Sup. Ct. 846, 34 L. Ed., 385, and Beasley v. Texas & P. Ry., 191 U. S., 492. Nor do our courts recognize as insuperable other obstacles pointed out in the cases just cited. See,—Tyler v. St. Louis S. W. Ry. Co., 99 Texas, 491, 91 S. W., 1, 13 Ann. Cas. 911; Kansas City M. & O. Ry. Co. v. State, 106 Texas, 249, 163 S. W., 582; State v. Sugarland Ry. Co., Tex. Civ. App., (writ denied) 163 S. W., 1047.

We perceive no reason justly inhibiting application of the remedy of specific performance to an extent found appropriate in examination of the facts.

8. Accordingly, we recommend that each question certified be answered "yes".

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified.

*C. M. Cureton*, Chief Justice.