## GARDNER v. CITY OF DALLAS. *
### No. 7721.

Circuit Court of Appeals, Fifth Circuit.
Jan. 21, 1936.
Rehearing Denied Feb. 26, 1936.

Alex F. Weisberg and Geo. S. Wright, both of Dallas, Tex., and Tarlton Morrow, of Wichita Falls, Tex., for appellant.

H. P. Kucera and Hugh S. Grady, both of Dallas, Tex., for appellee.

Before FOSTER, Circuit Judge, and DAWKINS and STRUM, District Judges.

STRUM, District Judge.

Appellant sues for the alleged breach of a garbage disposal contract between the city of Dallas and Edwin Carewe. Demurrer was sustained to plaintiff's petition. Plaintiff declining to amend, final judgment was entered against him, from which he appeals.

By the contract sued on the city granted Carewe, for a period of fifteen years, the exclusive privilege of "buying from the city" all wet garbage collected by the city, to be processed by Carewe into commercial products for his own profit; Carewe agreed to construct an adequate disposal or processing plant, at which the city agreed to deliver the garbage at a stipulated price; and the city purported to further agree that it would "through passage and enforcement of appropriate ordinances and the discharge of the police power of the city" provide for the collection of wet garbage in separate containers from trash and other dry refuse at the source of accumulation. The contract was duly executed by the then officers of the city. There were already in force ordinances of the city which appellant asserts, but the city denies, are appropriate and sufficient to satisfy the terms of the contract concerning separate containers.

Carewe, at large expense, erected the required processing plant. Shortly after its completion, a new set of municipal officers succeeded those who constituted the governing body of the city when the contract was executed. The new administration repudiated and declined to perform the contract, and appellant, Carewe's trustee in bankruptcy, brought this action for damages, not for anticipated profits, but for the dif-

*Writ of certiorari denied 56 S. Ct. —, 80 L. Ed. —.

ference between the construction cost and salvage value of the processing plant, which is unadaptable to other uses. United States v. Behan, 110 U.S. 338, 4 S.Ct. 81, 28 L. Ed. 168.

Undoubtedly, that portion of section 5 of the contract purporting to bind the city to pass and enforce ordinances regulating the accumulation of garbage in separate containers, being in derogation of the city's police power, is void as against public policy. Even if the existing ordinances are adequate to the purpose, the city can neither abdicate nor limit its police power when the continued use and availability thereof are essential to public welfare, and therefore the city could not lawfully commit itself to the continued enforcement of such existing ordinances. San Antonio v. Irrigation Co., 118 Tex. 154, 12 S.W.(2d) 546; Pierce Oil Corporation v. Hope, 248 U.S. 498, 39 S.Ct. 172, 63 L.Ed. 381; Stone v. Mississippi, 101 U.S. 814, 25 L.Ed. 1079; Pennsylvania Hospital v. Philadelphia, 245 U.S. 20, 38 S.Ct. 35, 62 L.Ed. 124; 3 McQuillin Munic. Corp. (2d Ed.) 813 (1271), 952 (1356); 44 C.J. 73.

The invalidity, however, of that ancillary and dispensable provision does not vitiate the entire contract. It may be disregarded without materially affecting the essential purpose of the parties. 13 C.J. 512 (470). The dominant purpose of this contract is to provide for the disposal of certain classes of the city's garbage. The agreement is that the city will, after collection, sell wet garbage exclusively to Carewe, delivered at the processing plant. The means and methods of collecting the garbage and delivering it at the plant remain within the discretion, and subject to the police power, of the city. The contract specifically provides that Carewe's rights shall always be "subordinate to the rights of the public and the police power of the city." Indeed, if it should become necessary or desirable in furtherance of the public welfare to adopt a different method of collecting or disposing of the garbage, the city has the indisputable power to work such changes in the lawful exercise of its police power, notwithstanding its contract with Carewe, as that power cannot be lawfully abrogated or limited by contract. Such a course would constitute a lawful

subordination of the contract. But the bald repudiation of its contract, wholly independent of any lawful exercise of the police power, is quite another matter.

In Texas it is held that the collection and disposal of garbage is a corporate, not a governmental, function. Ostrom v. San Antonio, 94 Tex. 523, 62 S.W. 909; City of Longview v. Stewart (Tex.Civ.App.) 66 S. W.(2d) 450; Paris v. Jenkins, 57 Tex.Civ. App. 383, 122 S.W. 411; City of Coleman v. Price, 54 Tex.Civ.App. 39, 117 S.W. 905. See, also, City of Stephenville v. Bower, 29 Tex.Civ.App. 384, 68 S.W. 833; City of San Antonio v. Mackey, 14 Tex.Civ.App. 210, 36 S.W. 760; City of San Antonio v. Mackey's Estate, 22 Tex.Civ.App. 145, 54 S.W. 33; City of Pittsburg v. Smith (Tex.Civ.App.) 230 S.W. 1113; City of Fort Worth v. Crawford, 74 Tex. 404, 12 S.W. 52, 15 Am. St.Rep. 840. The city may therefore contract with respect thereto, and such contracts are governed by the same rules as those made by private corporations. San Antonio v. Irrigation Co., 118 Tex. 154, 12 S.W.(2d) 546; Griffin v. Oklahoma Nat. Gas Corporation (C.C.A.) 37 F.(2d) 545; Tuttle Bros. & Bruce v. Cedar Rapids (C. C.A.) 176 F. 86; Omaha Water Co. v. Omaha (C.C.A.) 147 F. 1, 12 L.R.A.(N.S.) 736, 8 Ann.Cas. 614; 3 McQuillin Munic. Corp. (2d Ed.) 172 (970), and cases hereinafter cited.

The contract provides: "That the disposition of garbage is a 'governmental' function and comes within the police powers of the City of Dallas." Undoubtedly, the disposal of garbage is subject to the police powers of the city. But the contract stipulation that it is a "governmental" function is not controlling. The contracting parties can not thus override the Texas courts in the latter's interpretation of the public policy of that state, declaring the disposal of garbage to be a corporate function, with its attendant liabilities.

Where, as in Texas, the disposal of garbage is regarded as a corporate function, exclusive contracts for the disposal thereof over a fixed period of years, as well as ordinances having the same purpose, are sustained by the overwhelming weight of authority as a lawful exercise, not an abdication, of the police power.[1] The principle has been specifically sustained in Tex-

---

[1] California Reduction Co. v. Sanitary Reduction Works, 199 U.S. 306, 26 S.Ct. 100, 50 L.Ed. 204, and note, thrice cited with approval in San Antonio v. Irrigation Co., 118 Tex. 154, 12 S.W.(2d) 546, 549, California Reduction Co. v. Sani-

as with respect to sewage, in San Antonio v. Irrigation Co., 118 Tex. 154, 12 S.W. (2d) 546, 549, which in principle is not distinguishable from the case at bar. In that case a contract between the city and an individual for the exclusive disposal of sewage over a period of 99 years was held enforceable and specific performance awarded at the instance of the city, though it was of course held that such contract is always subject to the lawful exercise of the city's police power and right of eminent domain in case the prescribed means of disposal should become a nuisance or changing conditions should require different methods in the interest of the public welfare. That contract was sustained over substantially the same objections here urged.

By article 2, § 1, of its charter, the city of Dallas, a self-governing city, is given the general power "to protect health, life and property and to prevent and summarily abate nuisances * * * and to protect the lives, health and property of the inhabitants of said city," and by article 2, § 4 (3), of its charter, appellee has specific power "to prevent the deposit * * * and cause the removal of" substances "offensive and dangerous to health and comfort," which necessarily carries with it the power of disposal thereof. City of Breckenridge v. McMullen (Tex.Civ.App.) 258 S.W. 1099.

The holding thus stated in San Antonio v. Irrigation Co., supra, is apposite here:

"Sound discretion, then, was lodged in the city councilmen to determine what means should be employed for disposal of sewage and safeguarding of health in that regard. That discretion was not bargained; it was used in making the contract." As in Texas the disposal of garbage is a corporate, not a governmental, function, Stevenson v. Abilene (Tex.Civ.App.) 67 S.W.(2d) 645, strongly relied upon by appellee, is inconclusive upon the point here under consideration.

In determining the validity of the Texas contract here sued on, between which and the contract involved in San Antonio v. Irrigation Co., supra, there is no tenable distinction in principle, we follow the doctrine adopted in the last-named case by the Supreme Court of Texas, and hold that the contract here sued on, with the exception already noted as to paragraph 5, is enforceable unless and until abrogated in the lawful exercise of the city's police power, to which all such contracts are subject.[2] This, however, the appellee city appears not to have done. From the allegations of the petition it appears that appellee's new officers simply declined to recognize the contract as valid, and refused to perform it, though the method of garbage disposal therein provided has not been declared a nuisance, nor inimical to public health, nor has any other method of disposal been adopted in the lawful exercise of the city's police power.

tary Reduction Works (C.C.A.) 126 F. 29; Smiley v. MacDonald, 42 Neb. 5, 60 N.W. 355, 27 L.R.A. 540, 47 Am.St.Rep. 684, cited with approval in City of Breckenridge v. McMullen (Tex.Civ.App.) 258 S.W. 1099; Valley Spring Co. v. Plagmann, 282 Mo. 1, 220 S.W. 1, 15 A.L.R. 266, and note, page 287 et seq.; also, notes 27 A.L.R. 1013, and 72 A.L.R. 520; Walker v. Jameson, 140 Ind. 591, 37 N.E. 402, 39 N.E. 869, 28 L.R.A. 679, 683, 49 Am.St.Rep. 222, cited with approval in City of Breckenridge v. McMullen (Tex. Civ.App.) 258 S.W. 1099; National Fertilizer Co. v. Lambert (C.C.) 48 F. 458; Spencer v. Medford, 129 Or. 333, 276 P. 1114; Iler v. Ross, 64 Neb. 710, 90 N.W. 869, 57 L.R.A. 895, 97 Am.St.Rep. 676; Louisville v. Wible, 84 Ky. 290, 1 S.W. 605; Pantland v. Grand Rapids, 210 Mich. 18, 177 N.W. 302, 15 A.L.R. 280; McBean v. Fresno, 112 Cal. 159, 44 P. 358, 31 L.R.A. 794, 53 Am.St.Rep. 191 (sewage); Burns v. Enid, 92 Okl. 67, 217 P. 1038; Grand Rapids v. De Vries, 123 Mich. 570, 82 N.W. 269; Alpers v. City (C.C.) 32 F. 503; State v. Orr, 68 Conn.

101, 35 A. 770, 34 L.R.A. 279; Rochester v. Gutberlett, 211 N.Y. 309, 105 N.E. 548, L.R.A.1915D, 209, Ann.Cas.1915C, 483; State v. Cincinnati, 120 Ohio St. 500, 166 N.E. 583; Dreyfus v. Boone, 88 Ark. 353, 114 S.W. 718, 719; Urbach v. Omaha, 101 Neb. 314, 163 N.W. 307, L.R. A.1917E, 1163; Elliott v. Eugene, 135 Or. 108, 294 P. 358; 3 McQuillen Munic.Corp. (2d Ed.) 172 (970).

2 Northwestern Fertilizing Co. v. Hyde Park, 97 U.S. 659, 24 L.Ed. 1036; Galveston Wharf Co. v. Galveston, 260 U.S. 473, 43 S.Ct. 168, 67 L.Ed. 355; Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205; Cincinnati v. Louisville & N. R. Co., 223 U.S. 390, 32 S.Ct. 267, 56 L.Ed. 481; Ortega Co. v. Triay, 260 U.S. 103, 43 S.Ct. 44, 67 L.Ed. 153; St. Louis & S. F. R. Co. v. Mathews, 165 U.S. 1, text 23, 17 S.Ct. 243, 41 L.Ed. 611, text 619; Chicago, B. & Q. R. Co. v. Nebraska, 170 U.S. 57, 18 S.Ct. 513, 42 L.Ed. 948; New Orleans Gaslight Co. v. Drainage Commission, 197 U.S. 453, 25 S.Ct. 471, 49 L.Ed. 831.

428

This is not a case, such as Brenham v. Brenham Water Co., 67 Tex. 542, 4 S.W. 143, 153, or Ennis Water Works v. Ennis, 105 Tex. 63, 144 S.W. 930, and others cited by appellee involving a city's attempt to grant to an individual an exclusive franchise, indefinitely or for a long period of time, to *sell* to its inhabitants an innocuous and essential commodity, such as water, and which was condemned as a monopoly and perpetuity, and repugnant to article 1, §§ 17 and 26, Constitution of Texas. The power thus sought to be exercised by the city was held to be legislative in character. These and similar cases are adequately distinguished in San Antonio v. Irrigation Co., 118 Tex. 154, 12 S.W.(2d) 546. This contract gives an individual the exclusive right to buy from the city, for a period of 15 years, noxious substances which must be disposed of in the interest of public health, in the disposal of which the municipal authorities act in a corporate, not a legislative, capacity, and have broad discretion as to the choice of methods. Moreover, in Brenham v. Water Co., supra, it was said: "There are, however, certain classes of exclusive privileges which do not amount to monopolies." Also, "We are not concerned with the question of actionable damages."

From what is said in San Antonio v. Irrigation Co., supra, it necessarily follows, and we hold, that the contract here sued on is not objectionable in Texas as a perpetuity, nor is it repugnant to the anti-monopolistic provisions of the Texas Constitution. See, also, Walker v. Jameson, 140 Ind. 591, 37 N.E. 402, 39 N.E. 869, 28 L.R.A. 679, 683, 49 Am.St.Rep. 222, cited with approval in City of Breckenridge v. McMullen (Tex.Civ.App.) 258 S.W. 1099; State v. Orr, 68 Conn. 101, 35 A. 770, 34 L.R.A. 279.

Nor is this such a case as Houston v. Southwestern Bell Tel. Co., 259 U.S. 318, 42 S.Ct. 486, 66 L.Ed. 961, nor San Antonio v. San Antonio Pub. Serv. Co., 255 U.S. 547, 41 S.Ct. 428, 65 L.Ed. 777, and similar cases relied upon by appellee involving the fixing of rates for the future, clearly a legislative function which cannot be bargained away by contract. 3 McQuillen, Munic.Corp.(2d Ed.) 172 (970). No question of an attempt to control the legislative power of rate making for the future is here presented. The question here presented also differs from that considered in Fairbanks, Morse Co. v. Texas P. & L.

Co. (C.C.A.) 32 F.(2d) 693, 695, where it was also said: "We are not concerned with the question of actionable damages."

 The contract sued on carries the provision (paragraph 3) that Carewe shall not be entitled to damages from the city in the event the contract "shall be terminated by the City of Dallas in the exercise of its governmental function * * *." Undoubtedly, the city may subordinate the contract to the lawful exercise of its police power. This, however, the city has not done. The city is not justified in arbitrarily repudiating the contract, which in effect appellant's petition charges the city has done.

The judgment appealed from is reversed, and the cause remanded for further proceedings consistent with this opinion.