BROWNING–FERRIS, INC., Appellant,

v.

The CITY OF LEON VALLEY et al., Appellees.

No. 16192.

Court of Civil Appeals of Texas, San Antonio.

Oct. 17, 1979.

Rehearing Denied Nov. 14, 1979.

George J. Carson, Morrison, Dittmar, Dahlgren & Kaine, San Antonio, for appellant.

1. Both appellant and appellee refer to *garbage* and *solid waste* material in the same context

Harvey L. Hardy, San Antonio, for appellees.

## OPINION

KLINGEMAN, Justice.

This case involves the question of whether certain ordinances of the City of Leon Valley and contracts entered into pursuant thereto granting Sanitas Waste Disposal of San Antonio, Inc., d/b/a Industrial Disposal Service [Sanitas] an exclusive franchise for garbage[1] collection without competitive bids are null and void. Appellant Browning-Ferris, Inc., brought suit seeking a declaration that these ordinances and contracts are unconstitutional, null and void, and also sought injunctive relief and damages. Sanitas filed a petition in intervention but subsequently took a non-suit. Both appellant and appellee filed motions for summary judgment. The trial court denied appellant's motion and granted appellees' motion, ordering that appellant take nothing in its suit.

The City of Leon Valley is a municipal corporation organized and deriving its powers from the general laws of the State of Texas. Browning-Ferris, Inc., is a corporation in the business of collection, removal and disposal of commercial, industrial and residential solid waste. Appellant, at the time of enactment of said ordinances and awarding of the exclusive franchise and contract here involved, was collecting solid waste material within the City of Leon Valley pursuant to contracts with its customers.

A chronological summary of the pertinent ordinances here involved is as follows:

September 17, 1974—Leon Valley, after receiving competitive bids, granted an exclusive franchise for garbage collection except for container service to Hill Country Disposal, Inc., by Ordinance 579.

August 25, 1975—When Hill Country was unable to perform the contract Ordinance 621 was enacted, without competitive bids, granting an exclusive franchise

and use the terms interchangeably, and we will do so in this opinion.

to Sanitas for all garbage collection within the city limits, except for container service.

September 6, 1977—Ordinance 714 was enacted, without competitive bids, to amend Ordinance 621, granting Sanitas the sole authority and exclusive franchise to provide *all* collection service, including commercial container service.

The franchises granted are for limited terms: Ordinance No. 621 from September 1, 1975, to September 30, 1977, and Ordinance No. 714 from October 1, 1977, through September 30, 1979.

Appellant by three points of error asserts that the trial court erred in granting appellee's motion for summary judgment and in denying its motion for summary judgment because, as a matter of law, (1) a municipal corporation is prohibited from granting an exclusive franchise and contract to a private corporation for the collection, hauling and disposal of all solid waste material within the city; (2) a municipal corporation cannot award a contract for the collection, hauling and disposal of solid waste material on behalf of the city to a private corporation without competitive bids; and (3) a municipal corporation cannot by contract barter away its governmental powers.

Applicable constitutional and statutory provisions relied upon by appellant may be summarized as follows:

(1) Tex.Const. art. I, § 17: ". . . no irrevocable or uncontrollable grant of special privileges or immunities, shall be made; . . .";

(2) Tex.Const. art. I, § 26: "Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed . . .";

(3) Article 2368a section 2 states, in effect, that no county or city shall make any contract calling for or requiring the expenditure of payment of $3,000 or more without competitive bids, with certain exceptions hereinafter discussed Tex.Rev. Civ.Stat.Ann. art. 2368a § 2 (Vernon's Supp. 1978–79);

(4) Another pertinent statute is "County Solid Waste Control Act" Tex.Rev.Civ.

Stat.Ann. art. 4477–8 (Vernon's 1976). This Act applies to both cities and counties as seen from the definitions of "city" and "public agency" contained in Section 3(d) and (e).

Section 13 of this article states that any public agency or any county may offer solid waste disposal service to persons within its boundaries and may require the use of such services for any or all persons.

Section 4 authorizes "operating agreements" with any person to carry out such disposal.

■■■ Appellant, in support of its Points of Error Nos. One and Three relies on the constitutional provisions above referred to, and on two early Texas Supreme Court decisions, *City of Brenham v. Brenham Water Co.*, 67 Tex. 542, 4 S.W. 143 (1887), and *Ennis Water Works v. City of Ennis*, 105 Tex. 63, 144 S.W. 930 (1912). These cases both involve a city's attempt to grant to an individual an exclusive franchise indefinitely or for a long period of time to sell to its inhabitants an essential commodity, such as water. The court struck down these ordinances as illegal and void condemning them as monopolies and perpetuities repugnant to Article I, Sections 17 and 26, of the Texas Constitution. The power thus sought to be exercised by the city was held to be legislative in character. 4 S.W. at 152.

These cases are discussed and distinguished in a later Commission of Appeals decision, *City of San Antonio v. San Antonio Irrigation Co.*, 118 Tex. 154, 12 S.W.2d 546 (Tex.Comm'n App.1929, opinion adopted). That case involved an exclusive franchise between the City of San Antonio and an individual for a term of 99 years covering sewage of the City of San Antonio and the disposal thereof. The court in reply to the certified question "Did the members of the city council of the city of San Antonio, in office at the time the contract in question was entered into, have the power, under the Constitution and laws of the state, and under the provisions of the city charter, to enter into said contract so as to bind their successors in office thereto during the

period stipulated in said contract, to wit, 99 years?", answered in the affirmative.

McQuillin on Municipal Corporations states:

> Generally a municipal corporation can contract with one or more persons or corporations for the collection and removal of waste matters, garbage, filth, trash, refuse, carcasses, and offal. It may grant an exclusive privilege to a contractor or licensee to make such collection and removal for a specified period.
>
> .     .     .     .     .
>
> In any event, it is within municipal legislative competency to decide to have the service performed under a contract. Accordingly, an exclusive contract for the removal of these substances constitutes a proper exercise of the police power.
>
> .     .     .     .     .
>
> The common law doctrine that monopolies are odious and therefore illegal refers to franchises and agreements in restraint of trade, and has no application to police regulations designed to promote the health or morality of the public, and, hence, it has no application to an exclusive contract for the removal of waste products such as garbage, refuse, decaying carcasses, and similar waste matters,
>
> .   .   .

7 E. McQuillin, Municipal Corporations § 24.251 at 96–98 (3rd ed. 1968).

40 Tex.Jur.2d, Rev., Part 1, *Municipal Corporations* § 409 (1976) states:

> It is within the police power of a city to pass ordinances and adopt regulations governing the removal of garbage, . . . . (p. 166)
>
> .     .     .     .     .
>
> The Council may enter into contracts relating to the disposal of garbage .   . . (p. 167)
>
> .     .     .     .     .
>
> The constitutional provision prohibiting the creation of perpetuities and monopolies is not violated by an ordinance giving a particular person the exclusive right to haul garbage.  (p. 168)

In the *City of Wichita Falls v. Kemp Hotel Operating Co.*, 162 S.W.2d 150 (Tex.Civ. App.—Fort Worth) *affirmed, Kemp Hotel Operating Co. v. City of Wichita Falls*, 141 Tex. 90, 170 S.W.2d 217 (1943), the court held:

> The City, acting through its Board of Aldermen, had the right—indeed it was its imperative duty—to provide some means of accomplishing the end sought. It could have provided for gathering garbage by means of its own employees supplied with proper equipment. We also hold that it could, with equal propriety. and authority, employ an individual or corporation to perform the necessary functions in carrying out the plan.

162 S.W.2d at 153.  *See also, Town of Ascarate v. Villalobos*, 148 Tex. 254, 223 S.W.2d 945 (1949);  *Ex Parte London*, 73 Tex.Crim. 208, 163 S.W. 968 (1915);  and *City of Breckenridge v. McMullen*, 258 S.W. 1099 (Tex. Civ.App.—Fort Worth 1923, no writ).

In *Gardner v. The City of Dallas*, 81 F.2d 425, (5th Cir. 1936), *cert. denied*, 298 U.S. 668, 56 S.Ct. 834, 80 L.Ed. 1391, it was held that a contract by the City of Dallas granting an individual an exclusive garbage disposal contract for a period of 15 years was a valid exercise of the police power and not objectionable as a perpetuity, nor repugnant to anti-monopolistic provisions of the Texas Constitution, Tex.Const. art. I, §§ 17, 26.  In that case, the court had before it the same contentions made by appellants in this suit.  In rejecting such contentions, the court stated:

> Where, as in Texas, the disposal of garbage is regarded as a corporate function, exclusive contracts for the disposal thereof over a fixed period of years, as well as ordinances having the same purposes, are sustained by the overwhelming weight of authority as a lawful exercise, not an abdication, of the police power. The principle has been specially sustained in Texas as with respect to sewage, in *San Antonio v. Irrigation Company*, 118 Tex. 154, 12 S.W.2d 546, 549, which in

principle is not distinguishable from the case at bar.

*Id.* at 426.

The Court further said

This is not a case, such as *Brenham v. Brenham Water Co.*, 67 Tex. 542, 4 S.W. 143, 153, or *Ennis Water Works v. Ennis*, 105 Tex. 63, 144 S.W.2d 930, and others cited by appellee involving a city's attempt to grant to an individual an exclusive franchise, indefinitely or for a long period of time, to *sell* to its inhabitants an innocuous and essential commodity, such as water, and which was condemned as a monopoly and perpetuity, and repugnant to article I, §§ 17 and 26, Constitution of Texas. The power thus sought to be exercised by the city was held to be legislative in character.

*Id.* at 428.

The Fifth Circuit court also overruled a contention, similar to the one made here by appellants in its third point of error, that a municipal corporation cannot by contract barter away its governmental power, again citing *City of San Antonio v. San Antonio Irrigation Co., supra*, wherein that court stated:

Sound discretion, then, was lodged in the city's councilmen to determine what means should be employed for disposal of sewage and safeguarding of health in that regard. That discretion was not bargained; it was used in making the contract.

12 S.W.2d at 549.

Here, the City of Leon Valley did not barter away its governmental power by approving this contract. A careful reading of the contract shows numerous safeguards and restrictions requiring supervision by the city. In the *City of Wichita Falls v. Kemp Hotel Operating Co., supra*, the court said: "We are not concerned with whether or not the contract was a provident one; it evidently was one which the City thought proper. The whole contract is replete with reservations of supervision of the work by the City through the facilities of its health department." 162 S.W.2d at 154.

■ Appellant's only remaining point of error is its second point of error in which it asserts that, as a matter of law, a municipal corporation cannot award a contract for the collection, hauling, and disposal of solid waste material on behalf of the City to a private corporation without competitive bids.

In support of this point of error, it relies on the provisions of Article 2368a, Section 2, the pertinent parts of which read as follows:

No county, acting through its Commissioners Court, and no city in this state shall hereafter make any contract calling for or requiring the expenditure of payment of Three Thousand Dollars ($3,000.00) or more out of any fund or funds of any city or county or subdivision of any county creating or imposing an obligation or liability of any nature or character upon such county or any subdivision of such county, or upon such city, without first submitting such proposed contract to competitive bids.  * * * Provided, that in case of public calamity, where it becomes necessary to act at once to appropriate money to relieve the necessity of the citizens, or to preserve the property of such county, subdivision, or city, *or when it is necessary to preserve or protect the public health of the citizens of such county or city . . .* the provisions hereof requiring competitive bids shall not apply  . . . . (Emphasis added.)

Tex.Rev.Civ.Stat.Ann. art. 2368a § 2 (Vernon's Supp. 1978–1979).

Appellant cites no cases in support of its second point of error. The only Texas case we have found passing directly on the point is *Hoffman v. City of Mount Pleasant*, 126 Tex. 632, 89 S.W.2d 193 (1936). The article there under construction was a predecessor statute to the article involved here. However, the applicable provisions are basically similar and the exclusion provision as to public health is identical. In construing the identical provision of Article 2368a § 2, the Commission of Appeals, in an opinion adopted by the Supreme Court of Texas,

**734**

held that a county could validly expend funds to protect the public health without the necessity of requiring competitive bids otherwise required by that article and that the public health exception to the competitive bid requirement was operative at all times whether or not there was a "case of public calamity." The Court stated:

> The matter is one purely of statutory construction. After careful consideration of the whole act as well as the peculiar language of the exception, in light of the rules usually applicable when statutes concerning public health are involved, we have reached the conclusion that the use of the word 'when' clearly indicates the introduction of a new condition and exception not dependent upon a 'public calamity,' and that the requirement of competitive bids with publication of notice of letting the contract is dispensed with when such exception exists. In other words, we are of the opinion that, 'when it is necessary to preserve or protect the public health of the citizens of a county or city,' a condition requiring prompt and unrestrained action in order to remedy such a situation exists, regardless of whether such condition has been brought about by a public calamity or in some other way. The words 'preserve' and 'protect,' as applied to public health, carry the idea of timely, efficient, and effective action which keeps intact and unimpaired the good health of the citizens in advance of its impairment.

*Id.* at 194.

After a careful consideration of the entire record and the applicable authorities, we have concluded that all of appellant's points of error should be overruled. The judgment of the trial court is affirmed.