

# THE ATTORNEY GENERAL
# OF TEXAS

November 5, 1986

JIM MATTOX
ATTORNEY GENERAL

Honorable Bob Bush
Chairman
Committee on Judiciary
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No. JM-573

Re:  Whether a municipal housing authority may participate in the Consolidated Supply Program of the Department of Housing and Urban Development without complying with competitive bidding statutes

Dear Representative Bush:

You inquire whether the competitive bidding requirements of the Department of Housing and Urban Development [HUD] for its Consolidated Supply Program [CSP] meet the bidding requirements of state law, thereby allowing municipal housing authorities to participate in the Consolidated Supply Program in lieu of seeking competitive bids. We conclude that participation in the CSP would not constitute compliance with the requirements of competitive bidding specified in Texas statutes.

The basic concept of the CSP is that HUD enters into an open-ended contract with suppliers of common use items under which housing authorities are entitled to make purchases. The housing authorities deal directly with the suppliers listed in a CSP contract. All purchase orders, billing, and payments are handled by direct contact between the housing authorities and the suppliers without further HUD involvement. Copies of CSP catalogs listing current contracts and ordering information are published by HUD and distributed to housing authorities. See HUD Handbook 7460.8.

A contract between HUD and a supplier normally is for a period of one year. It is awarded on the basis of competitive bids submitted by suppliers to HUD in response to formal invitations for bids published by HUD "in appropriate media." The notice published in appropriate media announces that HUD will commence negotiating for the purchase agreements for the current year and that offers from suppliers will be received covering specified supply items until a closing date. The supplier certifies that the supply item is being made available to housing authorities through a purchase agreement at discounted prices that are lower than those at which the housing authorities could purchase comparable quantities of those items from the supplier through other purchasing channels. Consolidated supply contracts are awarded to responsible bidders whose bids are at or below the average

price for the supply item.  If less than three bids are received, the average or below method of award is not used and the award is made to responsible bidders whose prices are reasonable.  A consolidated supply contract does not obligate HUD or any housing authority to purchase any number or amount of the supply items covered by the contract.  If there are two or more consolidated supply contracts covering items supplied under the same specification and the contracts provide for a price differential, a housing authority shall place in its files a justification if it purchases from a supplier other than the one offering the lowest price.  See 24 C.F.R. §§965.601-965.605 (1985).

This office previously concluded that housing authorities, as divisions of cities, are subject to the competitive sealed bidding requirements of article 2368a, V.T.C.S.  Attorney General Opinion MW-132 (1980).  In addition, article 2368a.3, V.T.C.S., which specifies competitive bidding procedure for public works contracts, expressly applies to housing authorities.  It is our opinion that the bidding procedure used by HUD for consolidated supply contracts would not constitute compliance with the requirements of the state bidding statutes for contracts that are subject to those statutory procedures.

The competitive sealed bidding procedure provided in article 2368a for cities "shall be used for the award of all contracts subject to its provisions," with a different procedure provided for high technology procurements.  V.T.C.S. art. 2368a §2(b).  Article 2368a, section 2(b) provides, in part, that

> [w]henever the competitive sealed bidding procedure applies to a proposed contract, notice of the time and place when and where such a contract shall be let shall be published in such city once a week for two (2) consecutive weeks prior to the time set for letting such contract, the date of the first publication to be at least fourteen (14) days prior to the date set for letting said contract; and said contract shall be let to the lowest responsible bidder. . . .  If there is no newspaper published in such city, then the notice of letting such contract shall be given by causing notice thereof to be posted at the city hall for 14 days prior to the time of letting such contract.

Article 2368a.3, V.T.C.S., provides that a housing authority, among other governmental entities, is required to award a contract for the construction, repair, or renovation of a structure, road, highway, or other improvement or addition to real property, on the basis of competitive bids, the advertisement of which must be published locally and within specified dates.  It also provides for mailing notices for bids to requesting organizations not later than the date on which the first newspaper advertisement is published and mandates the opening of

bids at a public meeting cr at the office of the governmental entity. See V.T.C.S. art. 2368a.3, §§1-4. Unless all bids are rejected, contracts shall be awarded to the lowest responsible bidder,

> but a contract may not be awarded to a bidder who is not the lowest bidder unless prior to the award each lower bidder is given notice of the proposed award and is given an opportunity to appear before the governing body of the governmental entity or the designated representative of the governing body and present evidence concerning the bidder's responsibility.

Id. §5.

Article 2367a, section 1, V.T.C.S., provides that where bidding is required and two or more responsible bidders submit the lowest and best bids for the proposed city or district contract and the bids are identical, one bidder shall be selected by the casting of lots.

Compliance with statutory procedure for competitive bidding is mandatory. See Limestone County v. Knox, 234 S.W. 131, 134 (Tex. Civ. App. - Dallas 1921, no writ). In Niles v. Harris County Fresh Water Supply District No. 1A, 336 S.W.2d 637 (Tex. Civ. App. - Waco), writ ref'd, 339 S.W.2d 562 (1960), where a statute required the contract in question to be let to the "lowest responsible bidder" after publication of notice, the court stated that "the prime purpose of such a provision is to stimulate competition and compliance with it is mandatory. The term 'lowest responsible bidder' involves compliance with statutory requirements relating to competitive bidding." The Texas Supreme Court has stated that noncompliance with the mandatory statutory procedures for competitive bidding cannot be excused on the ground that no one is actually hurt by the violation. See Texas Highway Commission v. Texas Association of Steel Importers, Inc., 372 S.W.2d 525, 529 (Tex. 1963). Earlier, another court in Headlee v. Fryer, 208 S.W. 213, 217-18 (Tex. Civ. App. - Dallas 1918, writ dism'd) stated that

> [the competitive bidding] act requires the publication of notice of the intention to award the contract, either in a newspaper or by posting notices at the courthouse door. . . . It follows then that the commissioners' court having adjudged that it would receive bids on February 14th, and having failed to make publication of that fact, there was in the legal sense no publication at all, and, there being no publication at all, the fact that bidders did attend and no injury resulted is of no consequence, since by the act every contract let without publication is void. Otherwise, the purpose of the Legislature could in every similar case be defeated by showing that no

> injury resulted. The lawmaking authority has decreed that the publication shall be made in any event, and while it may appear in this case that what was intended has been accomplished, we feel that the fact will not warrant us in sweeping aside the vital requirement of the law.

The legislature expressly has exempted certain contracts from the requirements of competitive bidding. Article 2368a, section 2(a) provides that, except in the case of exempted procurements, no city with a population of 50,000 or more shall make a contract requiring an expenditure or payment exceeding $10,000 without submitting the proposed contract to competitive sealed bidding. In the case of a city with a population of less than 50,000, a contract for $5,000 or less is not subject to competitive sealed bidding. The statutory exempted procurements include:

> (1) procurements made in case of public calamity, where it becomes necessary to act at once to appropriate money to relieve the necessity of the citizens or to preserve the property of the city;

> (2) procurements necessary to preserve or protect the public health or safety of the citizens of the city;

> (3) procurements made necessary by unforeseen damage to public property, machinery, or equipment;

> (4) procurements for personal or professional services;

> (5) procurements for work done and paid for by the day, as such work progresses;

> (6) the purchase of land or right-of-way; and

> (7) procurements where the functional requirements of the city can be satisfied by only one source.

V.T.C.S. art. 2368a, §1. Also, section 122.014 of the Human Resources Code exempts the procurement of products or services of blind or other severely disabled persons from competitive bidding procedures. See Attorney General Opinions JM-444 (1986); JM-385 (1985).

Accordingly, funds for purposes such as the protection of public health may be expended without competitive bids, and the requirement of publication of notice of the letting of a contract is dispensed with when such an exception exists. See Browning-Ferris, Inc. v. City

of Leon Valley, 590 S.W.2d 729, 734 (Tex. Civ. App. - San Antonio 1979, writ ref'd n.r.e.). Obviously, as expressly provided by article 2368a, the statutory procedures for competitive bidding do not apply to cities with a population of 50,000 or more for contracts of $10,000 or less or to cities with a population of less than 50,000 for contracts of $5,000 or less.

The only exceptions to the competitive bidding requirements are those contained in the statutes themselves. See Attorney General Opinions JM-186 (1984); MW-535, MW-439 (1982). We are aware of no special exception from the state's bidding requirements that are applicable to municipal housing authorities for contracts to purchase common use items and equipment. The Housing Authority Law itself contains no special bidding procedures for housing authorities that differ from the general law provisions for competitive bidding and no exceptions or exemptions from competitive bidding for housing authorities. See V.T.C.S. art. 1269k. While this office does not construe the charter powers of a city in the opinion process, we point out that article 2368a, section 2(e), V.T.C.S., provides that provisions in reference to notice, advertisements of notice, requirements as to the taking of sealed bids based on specifications for public improvements or purchases, and the manner of letting of contracts, as contained in the charter of a city, if in conflict with the provisions of article 2368a, shall be followed in such city notwithstanding any other provision of article 2368a. Also, article 2368a.3, section 7(a) provides that to the extent a municipal home-rule charter conflicts with that act, the charter prevails.

                    S U M M A R Y

        As to contracts that are subject to the
    competitive bidding requirements specified in
    Texas statutes for contracts entered into by
    cities, the competitive bidding of the federal
    Department of Housing and Urban Development for
    its Consolidated Supply Program would not con-
    stitute compliance with or a substitute for the
    state's bidding requirements and would not permit
    municipal housing authorities to participate in
    the Consolidated Supply Program without seeking
    competitive bids.

                        Very truly yours,

                        J I M   M A T T O X
                        Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Nancy Sutton
Assistant Attorney General